660 So.2d 118 (1995)
Desmond L. KELLY, Plaintiff-Appellee,
v.
Darrell W. SNEED, et al, Defendants-Appellants.
No. 27171-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Writ Denied December 8, 1995.
*119 Tyler & Johnson by Tommy J. Johnson, Shreveport, for appellants.
Kitchens, Benton, Kitchens & Warren by Graydon K. Kitchens, III, Minden, for appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
SEXTON, Judge.
This is an appeal from the granting of a summary judgment. We affirm.
On August 1, 1993, Darrell Sneed lost control of the vehicle he was driving, a 1979 Oldsmobile, on Highway 517 in Bienville Parish, Louisiana, and slammed into several trees. Desmond Kelly and Michael Hawk were guest passengers in the vehicle. Marcus Sneed was the owner of the vehicle in question. Desmond Kelly filed suit against Darrell Sneed for personal injury received in the accident. Mary Hawk, as tutor for the minor, Michael Hawk, also filed suit. The two suits eventually were consolidated. A supplemental and amending petition filed by Desmond Kelly named Wayne Chance and Hartford Casualty Insurance Company as defendants. Hartford was the surety under a bond furnished by Wayne Chance, d/b/a Wayne and Dan's Auto Sales, a used car dealership and the seller of the vehicle to Marcus Sneed. The bond was required under the provisions of LSA-R.S. 32:774(G).
At the time of sale, Chance did not convey title or a bill of sale to Marcus Sneed. Because Sneed did not have title to the vehicle, he was unable to procure liability insurance for the vehicle which he loaned to his brother Darrell Sneed. Plaintiffs alleged that their losses were covered under the aforesaid bond under these circumstances.
Hartford filed a motion for summary judgment, contending that the losses were not covered under the bond, and they were entitled to judgment as a matter of law. The trial court rendered judgment in favor of Hartford finding no coverage for either plaintiff under the bond.
Kelly appeals arguing error in the granting of the summary judgment by the trial court.
A motion for summary judgment is properly granted only if the pleadings, depositions, *120 answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show that there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966. The burden is on the mover to establish that no material fact issues exist. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Transcontinental Insurance Company, 93-1480 (La. 4/11/94) 634 So.2d 1180.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Reynolds, supra.
Statutory bonds must be strictly construed. Price v. Piotrowski, 93-794 (La. App. 5th Cir. 2/9/94) 632 So.2d 1; Daigle v. Oakwood Homes, Inc., 460 So.2d 51 (La.App. 1st Cir.1984). This bond is an indemnity contract. LSA-R.S. 32:774(G). An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. An indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987). A contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions. Liem v. Austin Power, Inc., 569 So.2d 601 (La.App.2d Cir.1990). The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. When the common intent of the parties and the words are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Agreements to indemnify are strictly construed, and the party seeking to enforce the agreement bears the burden of proof. Liem, supra.
Hartford Casualty executed a surety bond with Wayne and Dan's Auto Sales in favor of the State of Louisiana Used Motor Vehicle and Parts Commission in the sum of $10,000 in conformance with the provisions of LSA-R.S. 32:774(G) which reads as follows:
G(1) Every person, firm, or corporation before being licensed hereunder as a used motor vehicle, new motorcycle, all terrain vehicle, or marine dealer shall show proof of responsibility by depositing with the commission a continuing bond in the amount of ten thousand dollars with surety thereon of a company authorized to do business in the state, which bond shall be approved by the commission, payable to the state of Louisiana through the commission, and shall be conditioned upon faithful observance of all laws relating to the proper disposition of licenses, tags, or titles and shall also indemnify any person who suffers any loss by reason of a failure to observe the provisions of the law relating to sales tax, licenses, tags or titles and shall also indemnify any person who suffers any loss, damages, and expenses by reason of a failure to deliver title and for the proper disposition of all taxes, licenses, and registration fees.
(Emphasis ours.)
The language of the bond closely follows the language of the statute.
The limited issue before this court is whether the bond provisions in question cover the loss sustained by Desmond Kelly, i.e., whether Kelly is "any person" under the bond language which Hartford has agreed to indemnify. Kelly argues that coverage under the bond extends to him because the bonding agreement created a stipulation pour autri in his favor. In support of this contention, Kelly suggests that the Vehicle Certificate of Title law was enacted to protect the general public. Therefore, Kelly argues that the language of the statute and bond, stating that Hartford agrees to indemnify "any person" who suffers any loss because *121 of failure to deliver title, extends to him and the injuries that he received as a result of his accident. We disagree.
In granting summary judgment in favor of Hartford, the trial court relied on Price v. Piotrowski supra. Although Price is factually distinguishable from the case at hand, the principles applied therein are relevant to a resolution of the present case and therefore merit discussion.
In Price, the plaintiff was an auto broker who filed suit against Piotrowski, a used car dealer, and Western Surety Company, surety under a bond issued to Piotrowski pursuant to LSA-R.S. 32:774, in the amount of $7,500, representing the amount Price loaned to Piotrowski to purchase used cars. Piotrowski's checks given to repay the loans were returned due to insufficient funds. As a result, Price sued claiming coverage under the bond. The trial court found coverage for Price under the bond and Western appealed.
The court of appeal reversed the trial court. Western argued that the actions of Piotrowski were not covered by the bond because the "losses" did not result from Piotrowski's failure "to observe the provisions of the law relating to sales tax, license, tags, or title" or his "failure to deliver title and for the proper disposition of all taxes, licenses, and registration fees." The court of appeal agreed and reversed the trial court finding. In finding that statutory bonds are to be strictly construed, the court noted:
The plain wording of LSA-R.S. 32:774(G) shows that the bond is not meant to cover any loss sustained by any person, but only those specifically caused by the principal's failure to observe the provisions of the law relating to sales tax, license, tags, or title and/or his failure to deliver title and for the proper disposition of all taxes, licenses, and registration fees. We agree with Western's argument that the bond only covers those losses sustained by those to whom Piotrowski owed a duty to deliver title.... [W]e hold that the statutory bond in question is meant only to indemnify those parties to whom the principal owes a duty to deliver title, i.e., the ultimate consumer, and not other car dealerships from whom the principal has purchased cars.
Price, supra at p. 2 (emphasis ours).
One of the cases cited by the first circuit in Price, although likewise factually distinguishable from the present situation, is instructive in our resolution of this case. In Chrysler Credit Corp. v. U.S. Fidelity and Guaranty Co., 543 So.2d 642 (La.App. 1st Cir.1989), Perry-Chrysler Plymouth, Inc. and Lonnie Freeman Chrysler-Plymouth-Dodge Truck, Inc. were licensed automobile dealers in Louisiana. Each had a financing agreement with Chrysler Credit for the purchase of Chrysler cars and trucks. Chrysler secured a chattel mortgage on the total stock of each dealership. Each dealer was to keep the proceeds of sales separate from all other funds and then transmit them to Chrysler Credit. However, each dealership, through its officers, tortiously converted funds which belonged to Chrysler Credit. Chrysler Credit in turn filed suit against USF & G alleging that the tortious conversion of funds was an act covered by the bonds issued to the dealer pursuant to the provisions of LSA-R.S. 32:1254. As in this case, Chrysler Credit contended that it was entitled to collect under the bond because it was a "person" within the meaning of LSA-R.S. 32:1254M(3) who had suffered a loss as a result of a violation of a written contract in connection with the sale or exchange of a motor vehicle. The trial court agreed and granted a partial summary judgment in favor of Chrysler Credit. USF & G appealed. As in the instant case, USF & G argued that the purpose of the bond was to protect the buying public from unscrupulous automobile dealers, not to cover the losses of an automobile finance company.
In reversing the trial court, the fourth circuit noted:
Although the above section [LSA-R.S. 32:1254M(3)], read alone, appears to permit a broad scope of recovery on the bonds, further analysis of the statute in which the above section is placed reveals a more narrow purpose for which the bonds were intended.
Chrysler Credit Corp. v. U.S. Fidelity and Guaranty Co., supra at 644.
*122 The Chrysler court, after reviewing the provisions of LSA-R.S. 32:1251 and the public policy underlying the statutes governing the distribution and sale of motor vehicles, determined that the purpose of that specific bonding statute was to protect the ordinary consumer in the purchase and exchange of motor vehicles with car dealers. The court opined that to hold that the bonds were intended to protect every person from every act of a dealer in connection with his management of the dealership would defeat the intended purpose of the statute. The court further noted that "[a] more expansive interpretation would more than likely cause depletion of the bond funds, leaving innocent purchasers without recourse against the bonds." Chrysler Credit, supra at 645.
Although both cases noted above are factually distinguishable from the case at hand, nevertheless, the analysis of the legislative intent of the applicable statutes and bonding agreements utilized by each court is applicable to a resolution of this case.
As in Price, which dealt with the same bonding provisions as this case, strict construction of the bonding agreement does not support the position of Kelly. As noted by the court, these provisions are intended to protect the immediate purchaser of the vehicle and not a third person. This conclusion is further buttressed by Chrysler Credit, which pointed out the legislative intent clearly stated in LSA-R.S. 32:1251 dealing with the distribution and sale of motor vehicles. While in different chapters of Title 32, Motor Vehicles and Traffic Regulation, the legislative intent and purpose underlying the bond requirement for the sale and distribution of new cars is useful in determining the legislative intent for the bond requirements set forth in LSA-R.S. 32:774.[1]
LSA-R.S. 32:1251 clearly states that the intent of the legislation dealing with sale and distribution of motor vehicles is for the protection of "citizens." This provision further states that these provisions were enacted to protect "purchasers" from certain abuses. As noted by our brethren of both the fourth and fifth circuits, to expand that intent, as appellant suggests, to Kelly, a borrower of the vehicle, would only serve to deplete the funds available for the actual consumer and ignore the legislative intent.
Because we have determined that the bonding provisions in question were intended to protect the purchaser of the used vehicle and not an individual such as Kelly, who borrowed the vehicle, it follows that Kelly's argument that the bonding agreement created a stipulation pour autri in his favor fails. In order for a stipulation pour autri to be established, the intent to confer the benefit upon the third party must be manifestly clear. Homer National Bank v. Tri-District Development Corp., 534 So.2d 154 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1236 (La.1989).
Finally, we conclude that the "loss" sustained by Kelly in this case cannot fairly be characterized as resulting from anything other Sneed's alleged negligence in failing to maintain control of the vehicle, rather than Chance's failure to deliver title to Marcus Sneed. The language of both the bond and LSA-R.S. 32:774 clearly state that indemnity shall occur only for loss occasioned through the failure to deliver title. Kelly's loss resulted from the reckless actions of Darrell Sneed.
In light of the foregoing, we determine that the trial court was correct in granting a summary judgment in favor of Hartford. Our de novo review of the record demonstrates that no reasonable interpretation of this bonding agreement when applied to the facts of this case provides coverage for Kelly under the bonding agreement issued by Hartford on behalf of Chance to the State of Louisiana. Accordingly, the ruling of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] See Louisiana Motor Vehicle Commission v. Wheeling Frenchman, 235 La. 332, 103 So.2d 464 (La.1958), wherein that Louisiana Supreme Court noted that one of the purposes of the newly enacted LSA-R.S. 32:1251 was to protect the buying public from "used car lot" dealers who were not financially responsible, but who were selling new cars.