679 So.2d 477 (1996)
NAB NATURAL RESOURCES, L.L.C., Plaintiff-Appellant,
v.
WILLAMETTE INDUSTRIES, INC., et al., Defendants-Appellees.
No. 28555-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
Rehearing Denied September 19, 1996.
*478 Nelson, Ltd., by Harry R. Nelson, Shreveport, for NAB Natural Resources, L.L.C.
Hudson, Potts & Bernstein by W. Craig Henry, for Co-Trustee of the Roy and Christene Sturgis Charitable and Educational Trust.
McConnell & Slattery by Charles E. McConnell, Springhill, for Homer Manufacturing Company and Garland Anthony, Jr.
Shaw, Weaver & Henry by Patrick E. Henry, Baton Rouge, for Intervenors.
Blanchard, Walker, O'Quin & Roberts by Robert W. Johnson, Shreveport, for Willamette Industries, Inc.
Liskow & Lewis by Cheryl V. Cunningham, John M. Wilson, New Orleans, for Nations Bank of Texas, N.A., Trustee for the Roy and Christene Sturgis Charitable and Educational Trust.
Napper, Waltman, Madden, Rogers & Waltman by O.L. Waltman, Jr., Ruston, for Willamette Industries, Inc.
Weems, Wright, Schimpf, Hayter & Carmouche by John O. Hayter III, Shreveport, for Sarah Broughton, et al.
Before SEXTON, NORRIS and WILLIAMS, JJ.
WILLIAMS, Judge.
In this action for damages based on breach of contract, the plaintiff, NAB Natural Resources, L.L.C., and intervenors, Ann B. King, individually and as usufructuary and as trustee, Kathryn Lillard and Stephen King, appeal a trial court judgment granting partial summary judgment in favor of the defendants, Willamette Industries Inc., Homer Manufacturing Company, John Speer, Robert Speer, Sarah Broughton, Beatrice Speer, Lucy Roseberry, Marie Speer and Nations Bank of Texas. The trial court dismissed all of the plaintiff's and intervenors' claims, except those claims for damages arising from defendants' alleged failure to maintain fences, soil and residual trees on the land. For the following reasons, we affirm.

FACTS
This dispute arises from two written agreements between F.B. King ("King") and Homer Manufacturing Company ("Homer") concerning the sale of timber on certain lands in Claiborne Parish. The plaintiff and intervenors are successors-in-interest to King, and the defendants are Homer and its assigns and successors. The first contract, dated November 25, 1947, involved approximately 5,400 acres of land. In February 1948, the parties executed the second contract, which involved approximately 1,450 acres of land. King received payments of $155,000 for existing and future timber under the first contract and $45,000 for such timber under the second contract.
As set forth in each contract, defendants acquired the right to use the land to grow timber, wood and other forest products, to conserve and promote the supply and growth of timber on the property and to remove and market this timber for a term of 40 years. Defendants were required to pay the annual property taxes as rent. Under the terms of each agreement, King agreed to terminate the farming operations on the land, evict all but one of the existing tenant farmers and remove all existing improvements from the subject land at his expense. King warranted title to the land and reserved the right to hunt and fish on the property, conduct oil and gas activities and permit an existing tenant to farm on 200 acres of the land.
*479 At some point prior to the termination of the contracts, the plaintiff observed that defendants were "clear-cutting" timber on the land. Plaintiff gave written notice to defendants, alleging breach of the contracts and demanding that defendants conduct forestry operations in accord with the terms of the agreements. Subsequently, plaintiff filed this action, in which the intervenors join, seeking damages and an accounting.
Prior to trial, the defendants filed a motion for partial summary judgment regarding those claims alleging that the contracts required defendants to produce a sustaining yield of timber and return the property to plaintiff in a reforested condition. The trial court granted defendants' motion and dismissed the claims of plaintiff and intervenors, except for those seeking damages for defendants' alleged failure to maintain fences, soil, land surface and residual trees. The court found that the agreement between the parties was a contract of sale, which created a separate estate in the timber on the land for the period of the contract. Plaintiff and intervenors unsuccessfully filed a motion for new trial. This appeal followed.

DISCUSSION
LSA-C.C.P. Art. 966 provides that a party, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief sought. After "adequate discovery" or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. LSA-C.C.P. Art. 966C. Plaintiff and intervenors ("plaintiffs") argue that the provisions of recently amended LSA-C.C.P. Art. 966 apply retroactively to this case. They contend that the defendants' motion for partial summary judgment was premature because the parties had not completed adequate discovery.
Procedural and interpretive laws apply retroactively unless there is legislative expression to the contrary. LSA-C.C. Art. 6. Procedural laws describe methods for enforcing, administering or determining rights, liabilities or status. La. D.O.T.D. v. Hellenic, Inc., 93-0870 (La.App. 1st Cir. 4/8/94), 636 So.2d 1004.
Article 966 establishes the proper method for obtaining summary judgment and thus it is a procedural rule applicable to the present case. The record includes the pleadings, the defendants' motion for partial summary judgment, answers to interrogatories, memoranda and affidavits filed in opposition to the motion, and copies of the original contracts between King and Homer. Plaintiffs complain that defendants did not submit affidavits with their motion for partial summary judgment and that discovery had not been completed when the motion was filed. However, Article 966 provides that a party may file a motion for summary judgment without affidavits and does not require completion of discovery before the court may rule on such a motion. Under the circumstances, Article 966 did not preclude the filing of defendants' partial summary judgment motion or its consideration by the trial court. The plaintiffs' argument lacks merit.
In several assignments of error, the plaintiff and intervenors ("plaintiffs") argue the trial court erred in granting the defendants' motion for partial summary judgment and in dismissing plaintiffs' claims for damages based on defendants' failure to implement a forestry plan for producing a sustained yield of timber, to replant the land and remove undesirable growth, and on defendants' removal of timber not purchased under the contracts of 1947 or 1948. Plaintiffs contend that material facts are in dispute between the parties.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966.
The mover has the burden of establishing the absence of a genuine issue of material fact. When a motion for summary judgment is made and supported, an adverse *480 party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing that there is a genuine issue for trial. Miramon v. Woods, 25,850 (La.App. 2d Cir. 6/22/94), 639 So.2d 353. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kelly v. Sneed, 27,171 (La.App. 2d Cir. 8/23/95), 660 So.2d 118.
In the present case, the record shows that the original parties, King and Homer, entered into contracts and their validity is not contested. The payment of the agreed sale price and the annual taxes is not disputed. The parties agree that the defendants did not replant the land or implement a sustained yield forestry plan. However, the plaintiffs contend that the question of whether the contracts constitute a sale or lease represents a disputed issue of material fact precluding summary judgment.
A fact is material if its existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are "material" if they potentially ensure or preclude recovery, affect the litigant's ultimate success or determine the outcome of a legal dispute. Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730; Miramon v. Woods, supra. Here, the fact that the contract grants a lease of the land does not, in itself, determine the duties of the parties or the outcome of the case, and thus is not "material" in that sense. After reviewing the record, we do not find that there are material facts at issue. The assignment of error lacks merit. We now consider whether defendants are entitled to judgment as a matter of law.
Plaintiffs argue the trial court erred in finding that defendants are entitled to partial summary judgment as a matter of law. Plaintiffs contend that the contracts obligated defendants to conduct operations to grow timber, to implement a plan for sustained yield forestry management and to leave a reforested stand of trees upon termination of the lease.
Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document, and its terms cannot be explained or contradicted by extrinsic evidence. Brown v. Drillers, Inc., 93-1019 (La. 1/14/94), 630 So.2d 741; Billingsley v. Bach Energy Corp., 588 So.2d 786 (La.App. 2d Cir.1991). When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. Brown v. Drillers, Inc., supra.
In the present case, the contracts at issue involve the sale of all existing and future timber and give lessee the right to use the land to grow and cut forest products at will. This right "is in the nature of a lease of said land...." See McCain v. Continental Can Company, Inc., 299 So.2d 454 (La.App. 2d Cir.1974); and see IP Timberlands Operating Co. v. Denmiss Corp., 93-1637 (La. App. 1st Cir. 5/23/95), 657 So.2d 282. Plaintiffs assert that the agreements obligated defendants to conduct continuous forestry operations to produce a sustaining yield of timber.
Paragraph one of both contracts provides that the buyer is acquiring "the right to use said lands in the future ... for the purpose of growing timber, wood and other forest products and promoting the supply, stand and growth of timber ... on the land and removing and marketing the same from time to time and at will...." The contracts expressly state that the buyer:
shall have the right to cut and remove all timber ... from said property or from any part thereof repeatedly, at such times as it may elect during the life of this contract and the removal of all or a part of the timber ... from said property or any portion thereof, one or more times, shall not terminate or affect the BUYER'S right at subsequent times to remove timber and other forest products that may be on said property or may grow thereon during the life of this contract; all of which rights are subject to payment of taxes on the property... as herein provided.
Contrary to plaintiffs' assertion, the plain meaning of this language cannot be construed *481 to create an obligation on the part of defendants to produce a certain amount of timber for the benefit of the landowner.
The plaintiffs contend that language in paragraph two of the contracts indicates that King expected to receive the benefit of a standing forest upon termination of the lease. However, a reasonable reading of this provision does not support plaintiffs' contention. Paragraph two states that King is executing the contracts in order to retain ownership of the land without the expense of paying taxes and to secure "the benefits that will accrue to the SELLER from the operations of the BUYER on said property in order that the SELLER may avail himself of all the benefits of present and prospective oil, gas and mineral rights...." Reading this provision in context with the remaining contract provisions shows that the benefits expected by King were the preservation of his mineral rights without production and protection against unauthorized encroachments on the land.
Plaintiffs argue that the defendants, as lessees, were obligated to utilize the property as a prudent administrator for the purpose of promoting the supply of timber and to return the property in good condition as reforested timberland upon termination of the lease. LSA-C.C. Art. 2710 provides that the lessee is obligated to enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease, and to pay rent.
The plaintiffs' argument is based on the assertion that the lease required the defendants to grow and manage the supply of timber for the benefit of plaintiffs. We have already noted that the plain wording of the contracts does not support this argument. The instruments gave defendants the right to use the lands for the purpose of growing and removing timber at their option, and did not impose any obligation to reforest. The only limit on the defendants' right to remove timber is found in paragraph eleven of the agreements, which prohibits defendants from cutting at any time any pine tree measuring less than five inches in diameter, except as necessary to conform with good forestry practices or to construct roads. Under this provision, defendants were required upon termination of the lease to return the land containing all trees smaller than the stipulated size at the time of their final cut. Whether the defendants complied with this condition is an issue remaining before the trial court for disposition, as acknowledged by defendants at the motion hearing and in their brief to this court.
After reviewing the record and the express language contained in the instruments, we conclude that the defendants were entitled to a judgment as a matter of law on the issues presented in their motion. The assignments of error lack merit.
Plaintiffs also argue that they are entitled to recover based on the legal theory of unjust enrichment. They contend that the purchase price stipulated in the contracts paid only for the timber standing on the land in 1947 and 1948. However, the plain wording of the agreements contradicts the plaintiffs' contention. The contracts expressly provide that the consideration paid covered all rights and privileges, "in addition to the purchase of the timber, wood and other forest products presently on said property." This argument lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's partial summary judgment in favor of the defendants is affirmed. Costs of this appeal are assessed to the plaintiff, NAB Natural Resources, L.L.C., and the intervenors, Ann Breed King, individually and as usufructuary and trustee, Kathryn King Lillard and Stephen King.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, WILLIAMS, STEWART and GASKINS, JJ.
Rehearing denied.