720 So.2d 839 (1998)
Austin TUCKER, et al., Plaintiff-Appellant,
v.
OCHSNER HEALTH PLAN d/b/a Ochsner Preferred Choice, Defendant-Appellee.
No. 31116-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1998.
Rehearing Denied December 3, 1998.
Jack M. Bailey, Jr., Shreveport, for Appellant.
Perry R. Staub, Jr., New Orleans, for Appellee.
*840 Before HIGHTOWER, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The plaintiffs, Austin and Beverly Tucker, appeal a summary judgment rendered in favor of the defendant, Ochsner Health Plan d/b/a Ochsner Preferred Choice. The district court found that Austin Tucker had terminated his health care coverage prior to his injury-causing accident and that defendant was not liable to reimburse the plaintiff for medical expenses incurred after the date of termination. For the following reasons, we affirm.

FACTS
In 1993, the plaintiff, Austin Tucker, a Baptist minister, accepted a temporary teaching position at the New Orleans Baptist Theological Seminary ("NOBTS" or "Seminary"). Under the terms of the agreement, Tucker agreed to provide teaching services from August 1993 through May 1994, and receive salary payments through July 1994. The position entitled Tucker to join a health maintenance organization (HMO). He submitted an "Enrollment Form" to the NOBTS to obtain health care coverage for himself and his wife and premiums were deducted from his salary. The HMO was Ochsner Health Plan d/b/a Ochsner Preferred Choice ("OHP").
On May 5, 1994, shortly before completing his teaching duties, Tucker requested the termination of his health care coverage with OHP by submitting a written memorandum to Pattie Shoener, the NOBTS Director of Payroll and Personnel. In the memo, Tucker stated: "Discontinue my Ochsner `Preferred Choice' Plan as of the current month. It is not available in Shreveport where we will be living...." Shoener responded by letter dated May 11, 1994, confirming Tucker's intention to terminate his health care coverage. After May 1994, health insurance premiums were not deducted from his salary. The seminary submitted a "change form" notifying OHP of Tucker's decision. OHP terminated Tucker's coverage effective May 31,1994.
On June 6, 1994, Tucker fell out of a tree while attempting to prune branches and sustained debilitating injuries. After the accident, he was admitted to Willis-Knighton Hospital for treatment. Hospital personnel advised OHP of Tucker's need for emergency care outside of the service area. OHP responded that health coverage was not in effect and refused to pay the cost of Tucker's medical treatment. In July 1994, acting on advice of counsel, Tucker tendered health insurance premium payments for the months of June, July and August of 1994 to NOBTS, with a request for continued health care coverage under the federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") provisions. The request was denied.
In January 1995, the plaintiffs, Austin Tucker and his wife, filed a petition for damages against the defendant, OHP. The plaintiffs sought reimbursement for past medical expenses and specific performance of the OHP Group Health Services Agreement ("GHSA"). The defendant filed a motion for summary judgment. The district court found that there were no genuine issues of material fact with regard to the plaintiff's cancellation of the health care coverage prior to the date of the accident, and granted summary judgment in favor of the defendant. The plaintiffs appeal the judgment.

DISCUSSION
In several assignments of error, the plaintiffs contend the district court erred in granting summary judgment and in finding that defendant satisfied its burden of proving the lack of a genuine issue of material fact concerning the cancellation of health coverage. Plaintiffs argue that the federal COBRA provisions were incorporated by reference as terms of the GHSA, and as a result, plaintiffs were entitled to continued coverage upon their tender of premium payments.
The Employee Retirement Income Security Act ("ERISA") is comprehensive legislation with a purpose to protect the interests of participants in employee benefit plans. 29 U.S.C. § 1001(b). ERISA was amended by COBRA to require employers who participate in group health plans to continue to provide health coverage to employees who *841 leave work under certain statutorily prescribed circumstances. 29 U.S.C. §§ 1161 1168. However, an employee benefit plan that is a "church plan" is exempt from ERISA regulation. The term "church plan" is defined as a plan established and maintained for its employees by a church or a convention of churches, which is exempt from federal income tax. 29 U.S.C. § 1002(33)(A).
The record reflects that the health plan sponsored by the seminary, which is owned by a convention of churches, meets the definition of a church plan and is exempted from the provisions of ERISA as amended by COBRA. Plaintiffs concede that the plan at issue is a church plan, but contend that NOBTS has waived the exemption and adopted the federal provisions because the GHSA specifically refers to COBRA.
In Krystyniak v. Lake Zurich Community Unit District No. 95, 783 F.Supp. 354 (N.D.Ill.1991), a public school district established an employee health plan, which qualified as a governmental plan exempted from ERISA regulation. A previously insured employee argued that the employer had waived the exemption because a plan provision referred to ERISA. The court found that the plain language of the statute exempts government plans and concluded that, despite any reference to the statute, the plan under which the employee sought benefits was exempt from ERISA. In another case, Shirley v. Maxicare Texas, Inc., 921 F.2d 565 (5th Cir.1991), a public school district's health plan administrator sought to avoid the applicable governmental plan exemption by urging that ERISA applied to the employee's claim, requiring removal of the case to federal district court. However, the United States Fifth Circuit Court of Appeal ruled that because of the statutory exemption, ERISA did not govern the health plan and thus the federal district court was unable to exercise jurisdiction.
In the present case, plaintiffs seek to avoid the church plan exemption on the basis of language in the health care agreement referring to the federal COBRA provisions. We find the foregoing federal authority regarding ERISA exemptions persuasive. Applying the reasoning of the federal cases to the present situation, we conclude that the GHSA language cannot be considered a waiver of the NOBTS church plan exemption or an adoption of ERISA, because the plain language of that statute exempts such church plans. Therefore, the plan under which plaintiff seeks benefits is exempt from the provisions of ERISA, as amended by COBRA. The plaintiffs' argument lacks merit.

Louisiana Law of Continuation Coverage
A group health insurance policy is issued to an employer, who shall be deemed the policyholder, covering one or more employees for the benefit of persons other than the employer. LSA-R.S. 22:215 A(1)(a). The insurer shall issue to the employer for delivery to each employee insured under the group policy, a certificate containing a statement as to the insurance protection to which he is entitled. LSA-R.S. 22:215 A(1)(a)(v). A group policy which insures employees shall provide that employees whose insurance would otherwise terminate because of the termination of active employment shall be entitled to continue their coverage under the group policy. LSA-R.S. 22:215.13(B). A notice of the continuation privilege shall be included in each certification of coverage. LSA-R.S. 22:215.13(H).
The motion for summary judgment shall be granted when the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P art. 966. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. NAB v. Willamette Industries, Inc., 28,555 (La. App.2d Cir.8/21/96), 679 So.2d 477.
The plaintiffs contend that defendant failed to comply with the Louisiana statutory notice requirements concerning the availability of continued health care coverage. Contrary to plaintiffs' contention, the affidavit which they submitted indicates that plaintiffs received the insurance policy or certificate, which included a provision concerning the availability of continuation coverage under certain conditions. Although such coverage was governed by state law and not COBRA, *842 as stated in Article IV of the policy, the GHSA provision was sufficient to notify plaintiffs of the potential availability of the continuation privilege.
Despite this notice, when Tucker submitted a written memorandum instructing the seminary to discontinue his health policy, he did not request continuation coverage or inquire about its availability. Rather, he simply asked the personnel office to adjust the payroll deductions to reflect this change. Thus, the facts do not support the assertion that plaintiff's decision to discontinue his health insurance would have been affected by notice of the possible availability of continued health care coverage.
LSA-R.S. 22:230.2 provides that an employee whose insurance under a group policy has been terminated is entitled to receive a policy or certificate of insurance, referred to as a "converted policy." However, the insurer is not required to issue a converted policy if the employee resides outside of the health maintenance organization service area. LSA-R.S. 22:230.2(G)(4). In his deposition, the plaintiff acknowledged that after completing his teaching duties, he returned to his Shreveport residence, which was located outside of the defendant's service area. Thus, the plaintiff was not entitled to a continuation or converted policy after cancelling his coverage.
The defendant has presented evidence establishing that plaintiff voluntarily discontinued his health care coverage, that plaintiffs received a copy of the insurance policy, which contained a clause concerning the potential availability of continuation coverage, and that plaintiffs resided outside of the OHP service area. After reviewing the record, we cannot say that the district court erred in finding a lack of any genuine issue of material fact concerning plaintiff's cancellation of his health insurance prior to the injury-causing accident.
In addition, pursuant to the applicable state law, continuation coverage was not available because the plaintiffs' residence was located outside of the defendant's service area. Consequently, the defendant is not liable for the payment of the plaintiffs' medical expenses. The assignments of error lack merit.

CONCLUSION
For the foregoing reasons, the district court's summary judgment in favor of the defendant, Ochsner Health Plan, is affirmed. Costs of this appeal are assessed to the appellants, Austin and Beverly Tucker.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER WILLIAMS, STEWART and PEATROSS, JJ.
Rehearing denied.