817 So.2d 1173 (2002)
PARISH OF CADDO, Plaintiff-Appellee,
v.
Judy DURHAM, Defendant-Appellant.
No. 35,557-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*1175 Donald R. Miller, Shreveport, for Appellant.
Jerald Norman Jones, Shreveport, for Appellee, Judy Durham.
Cook, Yancy, King & Galloway, by F. Drake Lee, Jr., Herschel Richard, Jr., John T. Kalmbach, for Appellee, Dannye W. Malone.
Before NORRIS, WILLIAMS and DREW, JJ.
DREW, J.
In this action to recover attorney fees and legal expenses incurred in her defense against criminal charges, Judy Durham appeals a judgment precluding her from recovering pursuant to a parish indemnification ordinance and a judgment dismissing her claims against Caddo Parish and Dannye Malone. We affirm.

FACTS
Durham was indicted in June 1996 on one count of malfeasance in office and two counts of forgery which allegedly occurred while she was serving as Administrator for Caddo Parish. She was acquitted of the malfeasance charge after a March 1997 bench trial. Durham was convicted by a jury in June 1998 of forgery and attempted forgery, but this court reversed her conviction. See State v. Durham, 32,154 (La.App.2d Cir.8/20/99), 748 So.2d 1, writ denied, 99-2959 (La.4/7/00), 759 So.2d 91.
On June 9, 2000, Bobby Sutton, Sr., who along with his son Bobby Sutton, Jr. represented Durham during the criminal proceedings, wrote a letter to Malone requesting that the Parish pay, pursuant to Caddo *1176 Parish Ordinance 2-37, legal fees and costs totaling $404,487.67 incurred by Durham in her successful defense against the malfeasance and forgery charges. In response, Caddo Parish filed a petition for declaratory judgment seeking a determination that Ordinance 2-37 does not provide for reimbursement of attorney fees and legal expenses in criminal cases. On July 28, 2000, Durham filed a reconventional demand against Caddo Parish and a third-party demand against Malone in his individual and official capacities. Durham alleged that but for Malone's promises and representations that Caddo Parish would reimburse her legal fees in the event of acquittal or dismissal of charges, she would not have obligated herself to pay the legal fees charged by the Suttons.
On August 25, 2000, Caddo Parish filed a motion for partial summary judgment as to its petition for declaratory judgment, asserting that Ordinance 2-37 does not provide for reimbursement of attorney fees or legal expenses incurred in the defense of criminal charges brought against a parish official or officer. The trial court rendered judgment on November 3, 2000 granting the motion for partial summary judgment upon finding that Ordinance 2-37 is restricted in application to civil proceedings and judgments only.
Malone filed a motion for summary judgment in his individual capacity on April 6, 2001. Soon thereafter, Malone, again in his individual capacity, filed an exception of prescription and/or peremption under La. R.S. 9:5605. Caddo Parish and Malone in his official capacity filed a motion for summary judgment on April 23, 2001.
By judgment rendered on May 23, 2001, the trial court granted the motion for summary judgment and sustained the exception of peremption filed by Malone in his individual capacity, dismissing all of Durham's claims against Malone in his individual capacity. The trial court also granted the motion for summary judgment filed by Caddo Parish and Malone in his official capacity, also dismissing her claims against those defendants. Durham appeals from this judgment. Caddo Parish and Malone in his official capacity have filed with this court the peremptory exceptions of prescription and peremption. These exceptions have been referred to the merits of the appeal.

DISCUSSION

CADDO PARISH ORDINANCE 2-37
Durham urges in her first assignment of error that the trial court erred in holding that Caddo Parish Ordinance 2-37 ("Ordinance") only applies to civil proceedings and judgments. The ordinance was adopted by the Parish Commission on July 28, 1993. It provides, in relevant part:
ARTICLE III. OFFICERS AND EMPLOYEES
SECTION 2-37 INDEMNIFICATION OF PARISH OFFICIALS AND OFFICERS
(a) As used in this section, "Official or Officer" means:
(1) Any person elected, or appointed to an elected office in the parish government and any person appointed to an unsalaried board, commission, or committee of the parish government, including, but not necessarily limited to, the officers and employees enumerated in the charter of the parish of Caddo;
(2) The parish administrator and his assistants;
(3) Any person appointed as the parish attorney or as an assistant parish attorney of the parish with respect to all responsibilities undertaken by the parish attorney and his assistants in *1177 their official capacities, whether or not specifically contemplated by Section 5.07 of the charter of the Parish of Caddo, including, but not limited to, the representation of public bodies other than the parish as well as their officers and employees.
(b) The policy of the Parish of Caddo shall be to hold harmless and indemnify each official or officer of the parish from any loss due to attorney fees, court costs, judicial interest, or award of monetary damages arising out of any claim, demand, suit or judgment in any court by reason of alleged negligence or other act, including any claim pursuant to USC 42:1981-1983, by the official or officer, if that person, at the time damages were sustained, was acting in the discharge of his duties and within the scope of his office of employment and such damages did not result from the intentional wrongful act or gross negligence of the official or officer.
(c) Within five (5) days after the official or officer is served with any summons, complaint, process, notice, demand, or pleading, that person shall deliver the original or a copy thereof to the parish attorney or his designated representative. Failure to make the required delivery under this section to the parish attorney or his designated representative shall preclude indemnification hereunder. On such delivery, the parish attorney shall assume control of the defense of the official or officer unless:
(1) The official or officer states in writing that he does not wish to be represented by the parish attorney. In such instance, the parish shall not be responsible for the fee of any counsel retained by the official or officer.
(2) The official or officer is covered by a policy of insurance under the terms of which the insurance company is required to provide and does provide a defense for the full extent of the claims made against the official or officer.
(3) After a thorough investigation by the parish attorney, it appears by clear and convincing evidence that the official or officer was not acting in the discharge of his duties and within the scope of his office or employment at the time of the alleged act or omission. If the parish attorney refuses to assume control of the defense under this subparagraph 3, the parish shall not indemnify said official or officer for attorney fees incurred unless the court subsequently finds that said person was acting in the discharge of his duties and within the scope of his employment or office and the damages did not result from the intentional wrongful act or gross negligence of said official, officer or employee.
(4) After a thorough investigation, it appears that representation of the official or officer would conflict with the representation of another person. In such instance, the parish attorney shall secure special counsel to represent the official or officer at the expense of the parish.
(d) If an official or officer of the parish is held liable for monetary damages for actions arising under the conditions of paragraph (b), the parish commission shall appropriate a sum sufficient to reimburse the official or officer. An out of court settlement approved by the parish attorney shall have the effect of a judgment of a court for the purpose of this paragraph.
(e) Nothing in this section shall be construed to impair, limit, or modify the rights and obligations of any insurance company under any policy of insurance or impair or limit the rights of a person to obtain private counsel in his own behalf. *1178 However, the parish should not be obligated to indemnify said individual for the attorney fees so incurred except as provided in paragraph C-(3) of this section. Further, as to any claim or suit for which an insurance company owes a duty to defend an official or officer, a duty to pay sums which an official or officer is legally obligated to pay as damages, or both of those duties, this section shall not apply to the extent of the duty or duties.
(f) The benefits of this section shall inure only to an official or officer of the parish or, on the death of the affected official or officer, to his legal, instituted, or irregular heirs and, as to any matrimonial regime, his surviving spouse, which however, shall not enlarge or diminish the rights of any other party.
* * * * *
Durham contends that the ordinance is based upon a state statute which has been interpreted in Louisiana attorney general opinions to permit reimbursement in criminal cases. Durham also argues that Malone, who drafted the ordinance, and several Commission members believed that the ordinance applied to criminal matters.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La. App.2d Cir.8/21/96), 679 So.2d 477.
The statutory and jurisprudential rules for statutory construction and interpretation apply to ordinances. Lieber v. Rust, 388 So.2d 836 (La.App. 2d Cir.1980); Varner v. Day, 00-2104 (La.App. 1st Cir.12/28/01), 806 So.2d 121.
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language; technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. La. R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the wording of a section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4.
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.
Based upon our reading of the ordinance, we conclude that it is clearly and unambiguously inapplicable to criminal matters. The ordinance is replete with terms commonly associated with civil litigation, while not referring to terms commonly associated with criminal prosecution. For instance, Section (b) of the ordinance states:
The policy of the Parish of Caddo shall be to hold harmless and indemnify each official or officer of the parish from any *1179 loss due to attorney fees, court costs, judicial interest, or award of monetary damages arising out of any claim, demand, suit or judgment in any court by reason of alleged negligence or other act, including any claim pursuant to USC 42:1981-1983, by the official or officer, if that person, at the time damages were sustained, was acting in the discharge of his duties and within the scope of his office of employment and such damages did not result from the intentional wrongful act or gross negligence of the official or officer.
This section sets forth the policy to be followed by Caddo Parish when indemnifying officials and officers. Accordingly, Caddo Parish is obligated to indemnify for "any loss ... arising out of any claim, demand, suit or judgment in any court by reason of alleged negligence or other act, including any claim pursuant to USC 42:1981-1983, by the official or officer, if that person, at the time damages were sustained ... and such damages did not result from the intentional wrongful act or gross negligence of the official or officer." Our emphasis.
The phrase "claim, demand, suit or judgment" cited above cannot be reasonably construed to include a criminal prosecution. In addition, Section B makes a distinction between "loss" suffered by the official and employee and the "damages" sustained. It states the official or officer will be indemnified for their "loss", but then limits this loss to instances when the official or officer is acting in the scope of his employment at the time the "damages" were sustained and such "damages" did not result from the intentional wrongful act or gross negligence of the official or officer. Presumably, this would be "damages" sustained by the party bringing suit against the official or officer. Moreover, 42 USCA 1981-1983 are federal statutes which do not involve criminal liability.[1]
We also note Section C of the ordinance, which concerns the Parish Attorney assuming control of the official's defense except under four circumstances. One circumstance is if the "official or officer is covered by a policy of insurance under the terms of which the insurance company is required to provide and does provide a defense for the full extent of the claims made against the official or officer." Another circumstance is if the Parish Attorney refuses to represent the official under the belief that the official was not acting in the discharge of his duties and within the scope of his office or employment at the time of the alleged act or omission. In such an instance, the parish shall not indemnify for legal fees incurred "unless the court subsequently finds that [the official] was acting in the discharge of his duties and within the scope of his employment or office and the damages did not result from the intentional wrongful act or gross negligence of said official[.]" Our emphasis.
Even if we were to find the ordinance to be vague and ambiguous and therefore attempt to determine the Parish Commission's intent in adopting the ordinance, we would still agree with the trial court's conclusion that the ordinance does not apply to criminal matters. We note the language in the ordinance's preamble, which provides, with our emphasis:
WHEREAS, Parish officials, officers and employees should be expected to exercise their discretion and independent professional judgment in discharging their duties and responsibilities within the scope of their office of employment; and

*1180 WHEREAS, Parish officials, officers and employees may be sued as the result of discharging such duties and responsibilities which are imposed upon them as a consequence of their employment; and
WHEREAS, the Parish desires to establish a policy and procedure for protecting those persons from liability as a result of discharging their duties and responsibilities within the scope of their office of employment.
The title or preamble of an act may be used to determine legislative intent. La. Associated Gen. Contr. v. Calcasieu, 586 So.2d 1354 (La.1991); Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610 (La. 1990).
The initial sentence of the preamble refers to officials, officers and employees of the Parish discharging their duties and responsibilities within the scope of their employment. The next sentence refers to these parties being sued as a result of discharging "such duties and responsibilities", a clear reference to the first paragraph. The third sentence then refers to protecting "those persons" from liability as the result of discharging their duties and responsibilities, which when read in the context of the first two paragraphs, could only mean the Parish officials, officers and employees who may be sued as the result of discharging such duties and responsibilities.
Durham contends that the Ordinance is patterned after La. R.S. 13:5108.2[2] which read, in relevant part, at the time the ordinance was enacted in 1993:
It is hereby declared to be the public policy of this state that the state shall hold harmless and indemnify each official, officer, and employee of the state from any financial loss which, for purposes of this Section, shall mean and include court costs, judicial interest, and monetary damages, arising out of any claim, demand, suit, or judgment in any court by reason of alleged negligence or other act by the official, officer, or employee, if the official, officer, or employee, at the time damages were sustained, was acting in the discharge of his duties and within the scope of his office, employment, contract or assignment and such damages did not result from the intentional wrongful act or gross negligence of the official, officer, or employee....
Durham points the court to several Attorney General opinions which she urges interpret the statute to include the payment of criminal fees. Of course, such opinions are merely advisory and not binding.
Typical of the Attorney General opinions cited by Durham is Opinion No. 87-741, a paragraph from which is quoted in Durham's brief:
This office has consistently ruled that where a public officer has been the subject of criminal charges arising out of the performance of his official duties, and those charges resulted in either acquittal, dismissal, or were quashed, the public officer may expend public funds to pay the attorneys' fees and expenses incurred for representation of the defense against those charges.
This opinion merely states that the public entity "may" pay legal fees and expenses; La. R.S. 13:5108.2 read that the state "shall" indemnify. A reasonable interpretation of this opinion is simply that there was no state prohibition against the state, or a political subdivision for that matter, from having the discretion to pay legal fees and expenses arising from a public *1181 official's successful defense against criminal charges.
La. R.S. 13:5108.2 was enacted in 1979 and amended for the last time in 1989 before being repealed. Durham argues that this statute is the sole source of the ordinance. The Legislature later enacted La. R.S. 13:5108.3 in 1988 to specifically provide for the payment of legal fees incurred in a successful defense against criminal charges. At the time Caddo Parish adopted the ordinance at issue, La. R.S. 13:5108.3 read:
Defense fees; payment upon acquittal, dismissal, or favorable judgment; special appropriation.
A. Notwithstanding any other provision of this Part, payment of any legal fees associated with the defense of any official, officer, or employee of this state or the Greater New Orleans Expressway Commission for any criminal action shall not be made except as provided in Subsection B.
B. Payment of legal fees for defense of an official, officer, or employee shall not be made from public monies through the office of the treasurer, from general appropriations, or out of special funds, whether state, federal, or self generated, unless:
(1) The defendant in a criminal matter is acquitted or the proceedings are dismissed, and
(2) Payment is authorized by a specific act of the legislature appropriating funds for such payment.
The legislature obviously felt the need to address in a separate statute the reimbursement of legal fees incurred in criminal matters. As cited by Durham, "Those who enact a provision are presumed to act deliberately and with full knowledge of all existing laws on the same subject." Guillot v. Brooks, 26,544 (La.App.2d Cir.3/1/95), 651 So.2d 345, writ denied, 95-0776 (La.4/6/95), 652 So.2d 1338. It is significant that when enacting the ordinance presumably based upon La. R.S. 13:5108.2, the Parish did not enact a companion ordinance, or simply insert language into the proposed ordinance specifically relating to the payment of legal fees incurred in a successful criminal defense as was enacted by the legislature several years earlier.
Durham also directs the court to deposition testimony from Malone and Commissioners Ken Epperson, Michael Williams and Donald Aytch who voted in favor of the ordinance. Our review of Malone's deposition shows that he testified that he drafted the ordinance based on a state statute and a Shreveport city ordinance that follows that statute. Malone denied telling Durham that she would be reimbursed under the ordinance.
Any testimony by individual Commissioners regarding their interpretation of the ordinance they enacted does not sway this court. As previously observed by this court:
The following pertinent comments concerning interpretation of an ambiguous statute are found in Authement v. Davidson, 366 So.2d 986 (La.App. 1st Cir.1978):
"It is not one individual legislator who enacts a statute, but the entire legislative branch which acts as a whole. Thus, it is the duty of the court to ascertain the legislative intent, as a whole, in order to construe a statute, to accomplish the purposes for which it was enacted....
"... It is not the opinion of the witness-legislator as to what the legislature intended that is admissible, but rather the factual evidence considered by the legislature in enacting legislation...."

*1182 Also see Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir. 1977).
Lieber v. Rust, 388 So.2d at 840.
Caddo Parish complains that the depositions of the Commissioners cited by Durham in her opposition to the motion were filed after the trial court had already ruled on this particular motion for summary judgment. These depositions were taken in April 2001. The trial court granted the motion for partial summary judgment in November 2000. Depositions obtained after summary judgment was rendered cannot be considered in appellate review of that summary judgment. Morgan v. Allstate Ins. Co., 393 So.2d 324 (La.App. 1st Cir.1980). For that additional reason we give these depositions no probative weight in our analysis of the ordinance.
This assignment of error is without merit. In summary, we find no support that the ordinance mandates reimbursement under these facts. However, we have been presented with no state or local law prohibiting the Commission from reimbursing Mrs. Durham, should they choose to do so. The motion for partial summary judgment was properly granted.

MALONE'S ALLEGED NEGLIGENCE
Durham argues in her second assignment of error that the trial court erred when granting the motion for summary judgment by relying upon the "law of agency and mandate, rather than La. C.C. arts. 2315 and 2317" in finding that Caddo Parish was "not liable for incorrect legal advice and/or promises of a certain outcome" made by Malone to Durham that Caddo Parish would reimburse her legal fees in the event of her acquittal or dismissal of the charges. This assignment of error does not address Malone's individual liability. Durham adds in her third and final assignment of error that the trial court also erred in granting Malone's exception of peremption. Because these two assignments of error are related, we shall discuss them together. As noted earlier, Caddo Parish and Malone in his official capacity have now filed the exception of peremption with this court, which is permissible. La. C.C.P. art. 2163.
Durham believes that Malone's individual liability and Caddo Parish's vicarious liability for Malone's promises and legal advice should be governed by La. C.C. articles 2315 and 2317. In essence, she urges that Malone committed legal malpractice in promising her (in effect misinterpreting or misrepresenting the ordinance) that Caddo Parish was obligated to pay her legal fees arising from her defense against the malfeasance and forgery charges. Caddo Parish Ordinance 2-36 provides that the Parish Attorney is to serve as the chief legal advisor to the parish administrator, commission and all offices, departments, boards and agencies of parish government.
Durham contends that Malone actively involved himself in her case by continuously promising and/or advising that all her criminal fees would be paid by Caddo Parish upon her acquittal or dismissal of all charges; asking for and receiving updates as to the amount of fees incurred in the criminal representation of her; regularly asking her attorneys to keep track of their fees on an hourly basis; meeting regularly with her attorneys to discuss the status of the case and strategies that might be utilized; and advising that he had the authority to write a check for her legal fees because the money was already in the Caddo Parish budget.
Durham was returning to Shreveport from St. Louis by car on June 1, 1996 when Malone called her to tell her that he had heard that she was going to be indicted. Durham testified during her deposition that Malone told her that he had *1183 hired Bobby Sutton, Sr. to represent her. Malone countered in his deposition that he did not select Sutton as Durham's attorney, but only recommended to Durham that she hire Sutton. According to Durham, Malone mentioned the indemnification ordinance during this phone conversation and stated that her legal fees would be paid pursuant to it as long as she was either acquitted or the charges were dismissed. Durham met with Malone during the following week, and among the subjects of their discussions was the indemnification ordinance.
Durham, Malone, Sutton, Sr. and Sharon Doyle met for the first time together before the indictment at Durham's house on June 8, 1996. Doyle, the Director of Human Resources for the Caddo Parish Commission, was also to be indicted. Durham stated that she felt at that time it wasn't her decision to select her own attorney unless she was paying the legal fees. Soon thereafter, Durham received a target letter from the Caddo Parish District Attorney's Office.
Durham, Doyle, Malone and Sutton, Sr. met together again before the indictment in Sutton's office on June 14, 1996. At this meeting, Sutton balked at representing both Durham and Doyle as suggested by Malone, even after Malone said Durham and Doyle would waive any conflict, but Sutton ultimately agreed to represent Durham after Malone said Sutton's personality was better suited to Durham's personality.[3] Sutton then telephoned attorney Ed Greer to ask if he would represent Doyle. Durham stated that when she expressed her preference to have Greer represent her, Malone responded that he wanted Sutton to represent her and Greer to represent Doyle. Durham recalled that Malone reiterated at this meeting that Caddo Parish would reimburse her legal expenses.
Although Durham thought Sutton's hourly billing rate was high, she didn't feel like she could object because Malone had already secured Sutton's services and had assured Durham that Caddo Parish would indemnify her. Durham testified that she probably would have chosen someone else to represent her if it had been her decision to make. Durham believed that the amount of money to indemnify her could come from parish funds appropriated to pay for settlements, judgments and litigation expenses, over which Malone had authority.
Doyle testified during her deposition that she had concerns about Greer representing her because she thought he was too expensive, but Malone alleviated her concerns before the indictment by telling her that Caddo Parish would reimburse her under an ordinance as long as she was acquitted or the charges were dropped. Doyle recalled that Assistant Parish Attorney Judi Milke also told her that she would be reimbursed pursuant to an ordinance. Doyle stated that four to five months after the indictment, while she and Malone were at a local restaurant, Malone assured her that Caddo Parish would reimburse her legal fees. Durham testified that Doyle told her about this conversation.
Malone testified during his deposition that he told Sutton, when Durham and Doyle may have been present, that Caddo Parish was authorized to pay the attorney fees and legal expenses of Durham and Doyle if they were acquitted or the charges against them were dismissed. Malone admitted discussing the ordinance with Durham, but says he only told her *1184 state law did not prohibit Caddo Parish from paying her attorney fees and legal expenses if there was a successful resolution to the criminal charges pending against her. Malone denied telling Durham that she would be able to recover her fees in this matter pursuant to the ordinance.
Sutton, Sr. testified during his deposition that when Malone contacted him in late May of 1996 and asked if he would represent some Parish officials who were about to be indicted, Malone said Durham's legal fees would be reimbursed. According to Sutton, during one of the initial meetings with Malone in June of 1996, Malone told him that there was a parish ordinance he had drafted that provided for reimbursement in the event of an acquittal or dismissal of charges. Sutton testified that Malone told him that he (Malone) needed to hire Durham's attorney in order for her to be eligible for indemnification under the ordinance.
The elder Sutton added that he and Malone frequently discussed Caddo Parish paying Durham's legal fees, and that Malone would remind him to keep track of his hours and sometimes ask for the status of the fees. Sutton recalled that Malone faxed him a copy of the ordinance in July 1997 after the first trial so he could refer to it if he submitted a bill at that point. Sutton alleged that after he sent the firm's bill for representing Durham to Caddo Parish in June of 1999, Malone stated he would have to submit the payment request to the Parish Commission to determine if they wanted to pay it. Sutton testified that this was also when Malone said for the first time that the ordinance did not apply to criminal cases.
Sutton Jr., who joined the defense team a few weeks before the first trial, recalled during his deposition that Malone would routinely remind him to keep track of the hours he was billing because this would have to be turned over to Caddo Parish. He also recalled that shortly after the first trial, Malone said that he would authorize a payment from Caddo Parish for Durham's legal fees as long as the money was in the budget, thus, it would not have to go before the Parish Commission for a vote. The younger Sutton also testified that throughout his representation of Durham, Malone's position was that as Parish Attorney he had written the ordinance under which the fees would be paid, and because he had written it, he knew that the fees would be paid.
Ed Greer, who represented Doyle, testified during his deposition that he did not have any conversation with Malone about the indemnification of Doyle's fees around the time he agreed to represent her. However, he stated that Sutton told him in a June 1996 telephone conversation that Caddo Parish would pay Doyle's legal fees as long as she wasn't convicted or pled guilty.
La. R.S. 9:5605, which governs actions for legal malpractice, provides in relevant part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; *1185 however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
The clear wording of the statute leaves no doubt that the Legislature intended that three years after the "act, omission, or neglect," the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291.
Peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461. Because the "continuous representation rule" is a suspensive principle based on the doctrine of contra non valentem, it has been held to not suspend the running of the three-year peremptive period found in the above-cited statute. Reeder, 701 So.2d at 1298.
Malone's alleged statement that Caddo Parish would indemnify Durham pursuant to the ordinance was uttered to Durham and the senior Sutton no later than June of 1996. Caddo Parish filed its petition for declaratory judgment in June of 2000 and Durham filed her reconventional and third-party demands against the parish the next month, four years after the alleged tortious act. Accordingly, her claims against Caddo Parish and Malone, both individually and in his official capacity, are perempted.
Durham attempts to escape the effect of La. R.S. 9:5605 by countering that what Malone did was the equivalent of a continuing tort because he continued to advise her over a period of four years that Caddo Parish would pay her legal fees and expenses if she used the attorney he had selected (Sutton) and was subsequently acquitted or the charges were dismissed. Assuming for purposes of this appeal that the principle of continuing torts is not a suspensive principle otherwise impotent against the effects of peremption, we nevertheless conclude that what Malone is alleged to have done was not a continuing tort.[4]
In Bustamento v. Tucker, 607 So.2d 532 (La.1992), the supreme court stated that a continuing tort existed when the cumulation of acts and conduct, and the resulting cumulation of damages, transformed individual incidents of sexual harassment into an actionable tort. The supreme court further stated that when "conduct becomes tortious and actionable because of its continuous, cumulative, synergistic *1186 nature, then prescription does not commence until the last act occurs or the conduct is abated." Id., 607 So.2d at 542.
See also Taussig v. Leithead, 96-960 (La.App. 3rd Cir.2/19/97), 689 So.2d 680, where the plaintiff urged that the defendant attorney had committed twenty separate acts of negligence while handling the plaintiff's divorce and community property settlement. Because each of the plaintiffs allegations originated from the divorce and property settlement during a continuous period of representation, the court of appeal agreed with the trial court that there was a single cause of action for negligent representation with one prescriptive period.
It was not the cumulation of the alleged repeated insistence by Malone that Caddo Parish would indemnify Durham which gave rise to Durham's negligence claim. Rather, her cause of action arose in June 1996 when Malone allegedly first conveyed this information to her.
Our conclusion that Durham's action is perempted is strengthened by the fact that at least by early 1999, Durham was well aware that the ordinance might not permit indemnification in criminal cases as she alleges she was led to believe by Malone.
Greer testified that the charges against Doyle were dismissed in August 1998. He contacted Malone on December 15, 1998 to discuss Caddo Parish reimbursing Doyle. This was the only conversation he had with Malone about Doyle's fees. Greer wanted to know what Doyle had to do to be reimbursed by Caddo Parish. Greer recalled that Malone told him that the indemnification ordinance appeared to apply primarily to civil cases; that there was a state statute that might be broader than the ordinance in its application; and that the Parish Commission would have to vote to approve the reimbursement of Doyle's legal fees. Greer felt that Malone's attitude was in contrast to what he had been led to believe by Sutton, Sr. and Durham.
Doyle relayed this information about Malone's apparent change of position to Durham. Doyle thought she told Durham about this in October of 1998, but this would have been before Greer actually discussed the matter with Malone. Bobby Sutton, Sr. testified that Greer or Doyle told him that Greer had talked to Malone about Caddo Parish paying Doyle's fees and that Malone was no longer saying Caddo Parish was going to pay the legal fees.
La. R.S. 9:5605 provides that the malpractice action is to be brought within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. It is apparent that Durham in early 1999 should have realized based upon the information she and Sutton received that Malone had altered his position on the issue of indemnification. Since the suit at issue was not filed until the summer of 2000, for this additional reason, Durham's claims are perempted.
We conclude that the trial court was not clearly wrong in sustaining the exception of peremption filed by Malone in his individual capacity. In addition, we grant the peremptory exception of peremption filed by Caddo Parish and Malone in his official capacity. Accordingly, it is unnecessary for this court to address the merits of the motions for summary judgment granted in the May 23, 2001 judgment. That judgment, which dismissed Durham's reconventional and third-party demands, is affirmed.

DECREE
At appellant's cost, the judgments are AFFIRMED.
*1187 WILLIAMS, J., concurs.
NORRIS, C.J., concurs.
NOTES
[1] § 1981 provides a statement of equal rights. § 1982 refers to the property rights of citizens. § 1983 sets forth a civil action for the deprivation of rights.
[2] Repealed in 2000. See now La. R.S. 13:5108.1.
[3] Sutton had earlier accompanied Doyle, at Malone's request, to an interview with the Caddo Parish District Attorney's Office.
[4] See Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112 (La.App. 3rd Cir.3/12/02), 811 So.2d 1242, which noted that while continuous tortious conduct and continuous damages may suspend prescription, peremption may not be suspended. Cf. Capitol House Preservation Company, LLC v. Perryman Consultants, Inc., 98-2216 (La.App. 1 Cir. 11/5/99), 745 So.2d 1194, writ denied, 99-3446 (La.2/11/00), 754 So.2d 937.