569 So.2d 601 (1990)
Michael Allen LIEM, Plaintiff/Appellee,
v.
AUSTIN POWER, INC., Defendant/Appellant.
No. 21841-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*603 Mayer, Smith & Roberts by Paul R. Mayer, Jr., Shreveport, for defendants/appellants Scandia, Inc. & U.S. Fire Ins. Co.
Joseph W. Greenwald, Shreveport, John C. Werner, Houston, Tex., for plaintiff/appellee Michael Allen Liem.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr., Shreveport, for defendant/appellee Southwestern Elec. Power Co.
Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for defendant/appellee Ceramic Cooling Tower, Inc.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, Shreveport, for defendant/appellee Austin Power, Inc.
John by Honeycutt, Jr., Alexandria, for intervenor/appellee U.S. Fire Ins. Co.
Rountree, Cox and Guin by Gordon E. Rountree, Shreveport, for defendant/appellee Ceramic Cooling Tower Co.
L. Scott Patton, Monroe, for defendant/appellee Louisiana Power and Light Co.
Before MARVIN, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Defendants, Scandia, Inc. (Scandia), and U.S. Fire Insurance Company (U.S. Fire), appealed the judgment of the trial court in favor of co-defendant, Ceramic Cooling Tower Company (Ceramic), granting its motion for summary judgment and holding that Scandia and U.S. Fire were required to defend, indemnify and hold harmless Ceramic against the claims of plaintiff, Liem. Finding there are material issues of genuine fact which preclude the granting of a summary judgment, we reverse.

Issues Presented
On appeal, Scandia and U.S. Fire present the following issues for review:
1) Whether a summary judgment is appropriate to decide the true intent of the parties when the mover requesting a summary judgment has pled that a minor procedural error was made in the wording of the appendix attached to the subcontract;
2) Whether a summary judgment is the appropriate vehicle to consider parol evidence in regard to ambiguity when the language of the contract appears to be ambiguous and the mover seeking summary judgment has sought to clear up that ambiguity with parol evidence; and,
3) Whether the trial court may grant summary judgment by discounting the opposing affidavit when the motion is supported by affidavits expressing the intent of the moving party in regard to a material fact, that is contractual indemnity, and is opposed by an affidavit from the opposing party stating there was no such intent.

*604 Factual Context

In 1985 the Dolet Hills Power Plant project was under construction in DeSoto Parish. The construction involved several power companies and Southwestern Electric Power Company (SWEPCO) contracted with Ceramic to build the cooling tower at the power plant. The General Contract between SWEPCO and Ceramic provided in Paragraph 21 of the General Conditions, which were attached to contract as Exhibit "A", that the contractor, Ceramic, would defend and indemnify purchaser, SWEPCO, from all claims arising out of or in connection with the work. Ceramic then subcontracted out this entire project on a "turn-key" subcontract to Scandia. Attached to the subcontract as Exhibit "G" was a copy of the General Contract between SWEPCO and Ceramic, including the General Conditions. The evidence shows that several construction workers at this project were injured or killed during the course of the construction. Plaintiff, Liem, was employed by Scandia as a carpenter and on July 15, 1985 he sustained serious injuries when he fell approximately 30 feet from the cooling tower which was being constructed as part of the project.
On July 14, 1986 plaintiff instituted this action for personal injury damages naming as defendants, Austin Power, Inc., Ceramic, Central Louisiana Electric Company, Inc., Louisiana Power and Light Company, SWEPCO and Scandia. In his petition plaintiff alleged the job was being conducted in a highly dangerous manner with little or no concern being given to the safety of the workers involved despite numerous complaints of the unsafe conditions. Plaintiff alleged his injuries could have been prevented by the use of certain safety equipment as required by law and defendants were aware or should have been aware of the non-existence of the safety equipment. Plaintiff contended defendants had a duty to protect him to the extent required by law and their failure to do so amounted to an "intentional negligent act".
U.S. Fire, Scandia's insurer, later intervened in the action seeking reimbursement for workers' compensation payments made to plaintiff. A motion for summary judgment filed by Scandia was granted, finding that plaintiff's exclusive remedy against it was a claim for workers' compensation benefits because the accident giving rise to the action had occurred during the course and scope of plaintiff's employment. Additionally, Austin Power, Inc. and Louisiana Power and Light Company were dismissed from the action.
On June 10, 1987 Ceramic filed a third-party petition naming as third-party defendants, Scandia and U.S. Fire. Ceramic alleged it had entered into a general construction contract with SWEPCO for the construction of a cooling tower in the Dolet Hills project and then had entered into a "turn-key" subcontract with Scandia for the construction of that cooling tower. Ceramic contended the subcontract included an indemnity agreement by virtue of Paragraph 21 which was contained in the General Conditions of the General Contract and attached to the subcontract as Exhibit "G". This agreement required Scandia to defend and indemnify it for the claims and allegations set forth in the original petition. Ceramic alleged that Scandia had refused to honor and comply with its subcontract and contended Scandia should be required to defend and indemnify it. Ceramic further alleged that should it be cast for any liability it was entitled to judgment for full and complete indemnification against Scandia together with attorney's fees and other costs of defense. Ceramic also alleged that the insurance issued by U.S. Fire to Scandia provided full and complete liability coverage for Scandia and further included contractual liability coverage which resulted in Ceramic being an additional insured under those policies. However, the insurer had likewise refused to honor its insurance contract and duty to defend Ceramic. Ceramic prayed for judgment against the insurer for full and complete indemnification in the event it should be cast for any judgment, together with attorney's fees and all other costs of defense.
In its answer to Ceramic's third-party demand, Scandia alleged it had entered into a subcontract on or about March 28, 1983. Scandia contended the exhibit styled "General *605 Conditions" which contained the indemnification language was annexed to the written subcontract entered into between Scandia and Ceramic but were the general conditions which formed a part of the contract between Ceramic and its principal, SWEPCO. Scandia alleged the written contract between it and Ceramic contained no provisions obligating it to indemnify Ceramic.
Scandia and U.S. Fire filed a motion for summary judgment alleging the provisions of the contract dealing with the indemnification language did not require them to indemnify or defend Ceramic. Scandia and U.S. Fire noted that Ceramic alleged the General Conditions of the construction contract between SWEPCO and Ceramic for the construction of the cooling tower were incorporated into the contract between Ceramic and Scandia and that Paragraph 21 of the General Conditions provided for indemnity. The General Conditions provided for indemnity owed by the Contractor to the Purchaser and/or Consulting Engineers. Scandia argued it was obvious the indemnity agreement was one existing between the contractor, Ceramic, and the purchaser, SWEPCO, and should not be construed to exist between the contractor, Ceramic, and the subcontractor, Scandia. Thus, the allegedly applicable portions of the contract between SWEPCO and Ceramic had no application to the subcontract entered into by Scandia and Ceramic did not bind Scandia in any way to indemnify or defend it.
After reviewing the record, the trial court denied Scandia and U.S. Fire's motion for summary judgment and further found that Scandia and U.S. Fire were bound under a contract of indemnification to indemnify or hold harmless Ceramic for losses sustained by it. On application of Scandia and U.S. Fire for supervisory writs, this court found the trial court was in error in granting judgment holding that Scandia and U.S. Fire were bound to indemnify Ceramic when the only matter properly before the trial court was whether or not a genuine issue of material fact existed in regard to the motion for a summary judgment. That portion of the judgment was annulled and set aside and the case remanded for further proceedings. See Michael A. Liem v. Austin Power, Inc., Et Al., No. 21,139-CW.
Ceramic also filed a motion for summary judgment, alleging that the General Conditions in the subcontract, in particular Paragraph 21, between it and Scandia required Scandia and U.S. Fire to defend and indemnify it.
In opposition to the motion for summary judgment, Scandia and U.S. Fire presented the affidavit of Edward J. Glackin who was the Corporate Marketing Manager of Structors, Inc., the parent company of Scandia. Glackin's duties in this position specifically included the review, comment and analysis of contracts. In this capacity, Glackin had first hand knowledge of the contents of Scandia's proposals and the contract draft submitted by Ceramic. Glackin stated that at no time during the period of contract negotiation did Ceramic propose to require Scandia to indemnify, defend, hold harmless or insure it from claims of the nature asserted by or on behalf of plaintiff nor did such issues ever form a part of the discussions concerning Scandia's obligations to Ceramic under any contract proposal received from it. To the contrary, if such matters had arisen and had Ceramic proposed for Scandia to indemnify, defend, hold harmless or insure Ceramic against the claims of the nature asserted by or on behalf of plaintiff, Glackin stated he would have made a specific objection. Glackin stated that the contract between Ceramic and Scandia specifically did not require Scandia to indemnify and hold harmless Ceramic from any liability in connection with the construction of the project and in entering into the contract with Ceramic, Scandia had no intention of indemnifying or holding harmless Ceramic from any claims of the nature asserted by and on behalf of plaintiff nor at any time did Ceramic convey to Scandia any such intention.
In support of its motion for summary judgment, Ceramic submitted the affidavits of Charles Bardo and John Decker. Decker's affidavit stated he was the Manager of *606 Contract Administration for Ceramic on the date of the execution of the subcontract. Decker asserted he was intimately familiar with the project and the contract document and had personal knowledge that Ceramic as contractor had entered into a General Contract with SWEPCO for the construction of the cooling tower for the power project and then had entered into a "turn-key" subcontract with Scandia for the construction of that tower. Decker stated the intent of the parties was for Ceramic to subcontract out the entire project to Scandia and the parties intended to incorporate within the subcontract all of the terms and conditions of the General Contract including the General Conditions. The General Conditions were in fact incorporated within the subcontract and specifically referred to in paragraph 1.5 as Exhibit "G".
The affidavit of Charles Bardo, President of Ceramic at the time of the execution of the subcontract, stated that in his capacity as president he was thoroughly and intimately familiar with the power project and the contract document. In fact, the affiant reviewed and approved the subcontract prior to its execution by Ceramic. Bardo had personal knowledge that Ceramic had entered into a general construction contract with SWEPCO for the construction of the cooling tower and then had entered into a total "turn-key" subcontract with Scandia for the construction of that tower. He stated it was the intent of the parties to the subcontract to incorporate all of the provisions of the General Contract into the subcontract in light of the fact that Ceramic was subcontracting out to Scandia the entire project. It was likewise the intent of the parties that the General Conditions attached to the General Contract, including the indemnity and insurance provisions of Paragraph 21, be applicable to the parties. Affiant stated that on August 28, 1985 Scandia had assigned to the Austin Company, the parent company of Scandia, the entire project with the consent of Ceramic. Bardo stated he was thoroughly familiar with that agreement and had executed the agreement on behalf of Ceramic. He contended that to further evidence that the intent of the parties in the subcontract was for Scandia to indemnify Ceramic according to the provisions of Paragraph 21 of the General Conditions, the Austin Company agreed to indemnify and hold Ceramic harmless pursuant to the provisions of the assignment agreement.
Paragraph 21 of the General Conditions provided in pertinent part:
Contractor shall defend and indemnify and save Purchaser and the Consulting Engineers harmless from any and all claims, losses, damages, costs and expenses, including attorneys' fees, arising or alleged to arise from personal injuries, including death, or damage to property, including the loss of use thereof, and resulting from, arising out of or in connection with the WORK or alleged to result from or arise out of or in connection with the WORK, whether or not any act or omission of Purchaser and/or Consulting Engineers contributed thereto, including, without limitation, all liability imposed by virtue of any law designed to protect persons employed at the WORK site.
The same General Conditions which were attached to the General Contract were identified and described as Exhibit "G" in Paragraph 1.5 of the subcontract.
1.6 of the subcontract provided as follows:
This agreement, and the documents and drawings of Paragraph 1.5 above represent the total of this subcontract and are fully a part of this subcontract as if attached to this agreement or repeated therein.
After examining the evidence, including the affidavits and subcontract, the trial court granted summary judgment, finding the indemnification clause was clearly incorporated into the subcontract. In written reasons for judgment, the trial court held the subcontract entered into between the parties on March 28, 1983 clearly made "Exhibit G" or the "General Conditions" part of the contract. The court noted the affidavit filed on behalf of Scandia stated it was never its intention to indemnify or hold Ceramic harmless, whereas affidavits filed *607 by representatives of Ceramic stated the contrary. The affiants stated they had personal knowledge of the facts surrounding contract negotiations and the affidavits filed by both parties appeared to have been made on personal knowledge by persons competent to testify as to matters stated therein and set forth facts otherwise admissible into evidence. The trial court found the clear wording of the indemnification clause which was unquestionably made a part of the subcontract entered into between Scandia and Ceramic mandated and required Scandia to defend and indemnify Ceramic from any and all claims or losses. The court stated that self-serving declarations as to the intent of the parties should not negate what appeared to be an unequivocal incorporation of an indemnification clause in the subcontract and it did not believe in a contract of this magnitude such a clause would be overlooked or misunderstood.

Legal Principles
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against the granting of the motion. A fact is material if its existence or non-existence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect the litigants' ultimate success or determine the outcome of the legal dispute.
It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised and the weighing of conflicting evidence on a material fact has no place in the summary judgment procedure. The court must first determine whether the supporting documents presented are sufficient to resolve all material issues of fact. If the evidence presented is subject to conflicting interpretations or reasonable men might differ as to its significance, summary judgment is not proper. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubt should be resolved in favor of a trial on the merits.
See Hakim v. Albritton, 552 So.2d 548 (La.App. 2d Cir.1989); Weems v. Hickman, 524 So.2d 792 (La.App. 3d Cir.1988); Toole v. Tucker, 519 So.2d 348 (La.App. 2d Cir. 1988), writ denied, 521 So.2d 1156 (La. 1988); Marsh v. Reserve Life Insurance Company, 516 So.2d 1311 (La.App. 2d Cir. 1987), and Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La.App. 2d Cir.1984).
A summary judgment may not be granted on the basis that the affidavits on one side preponderate over the opposing affidavits. Moreaux v. American Mutual Insurance Company, 302 So.2d 686 (La. App. 3d Cir.1974), writ not considered, 307 So.2d 627 (La.1975), and Jones v. Davis, 233 So.2d 310 (La.App. 2d Cir.1970). Further, summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Penalber v. Blount, 550 So.2d 577 (La.1989); Chelette v. Wal-Mart Stores, Inc., 535 So.2d 558 (La.App. 3d Cir.1988), writ denied, 537 So.2d 1170 (La.1989), and Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983).
The courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. The meaning and intent of the parties of the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Under Louisiana law, when there is any doubt about the meaning of an agreement, the court must ascertain the common intention of the parties, rather than adhering to the literal sense of the terms. If this intent cannot be *608 adequately discerned from the contract itself, the court may then consider evidence as to the facts and circumstances surrounding the parties at the time the contract was made. Therefore, summary judgment is generally not appropriate to show the intent of the parties to a contract, except where their intent is clear from the contract itself. Bank of Coushatta v. Patrick, 503 So.2d 1061 (La.App. 2d Cir.1987), writ denied, 506 So.2d 1231 (La.1987); Hardware Wholesalers, Inc. v. Guilbeau, 473 So.2d 108 (La.App. 3d Cir.1985), and Sellers v. Seligman, 463 So.2d 697 (La. App. 4th Cir.1985), writ denied, 464 So.2d 1379 (La.1985).
A contract of indemnity forms the law between the parties and therefore must be interpreted according to its own terms and conditions. The purpose of an indemnity agreement is to allocate the risk inherent in the activity between the parties to the contract.
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Interpretation of the contract is the determination of the common intent of the parties and when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The determination of the intention of the parties is the foremost requirement in the interpretation and construction of a contract. Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof. Soverign Insurance Company v. Texas Pipe Line Company, 488 So.2d 982 (La.1986); Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Robinson v. State Through Department of Transportation, 454 So.2d 257 (La.App. 1st Cir. 1984), writ denied, 458 So.2d 122 (La.1984); Poole v. Ocean Drilling & Exploration Company, 439 So.2d 510 (La.App. 1st Cir. 1983), writ denied, 443 So.2d 590 (La.1983); Commercial Union Insurance Company v. Melikyan, 430 So.2d 1217 (La.App. 1st Cir.1983), and Miller v. Harvey, 408 So.2d 946 (La.App. 2d Cir.1981).

Indemnification
On appeal, Scandia and U.S. Fire note that Ceramic contends that a minor procedural error was made when the General Conditions were attached to the subcontract in that the party designation of the General Conditions was not changed from "Purchaser" and "Contractor" to "Contractor" and "Subcontractor". Ceramic contends that the intent of Paragraph 21 of the General Conditions was that Scandia agreed to defend, indemnify and hold harmless Ceramic even though the words do not specifically state that. Scandia argues that this minor procedural error was a significant substantive change to the subcontract and the argument by Ceramic that there was error in the language of the contract created a material issue of fact. Further, Scandia notes the conflicting affidavits of the parties as to their intent to indemnify. Scandia and U.S. Fire argue that the true intent of the parties as revealed by testimony of the representatives involved is more adequately achieved in a full trial and the true intent of the parties regarding the alleged error in language as contended by Ceramic is a material fact because it is essential to Ceramic's cause of action against Scandia and without ascertaining the true intent of the parties, the outcome of this legal dispute cannot be determined. Finally, Scandia and U.S. Fire argue that when a party opposing summary judgment presents an affidavit which contradicts the assertions of the mover, a conflict of opinion arises. The fact that the trial court believes the opposing affidavit is "self-serving" is not enough to justify granting a summary judgment. Thus, Ceramic did not carry its heavy burden of proof to show there were no genuine issues of material fact.
The subcontract at issue herein is subject to differing interpretations and a trier-of-fact could reasonably conclude that no indemnity agreement was intended by the parties despite the presence of the indemnity clause which was incorporated by reference in the subcontract pursuant to Paragraphs 1.5 and 1.6. The indemnity provision *609 does not specifically identify by name the parties by whom or to whom the indemnity obligation was made but instead uses ambiguous identities such as "Contractor" and "Purchaser". Further, as the indemnity agreement found its way into the subcontract by means of a blanket incorporation by reference to the General Contract, there is certainly some room for doubt as to the parties' intent in regard to the effect of that incorporation by reference. Considering the ambiguity inherent in the subcontract, we cannot say as a matter of law that indemnity was intended by the parties.
The ambiguity of the subcontract itself should certainly preclude the granting of a summary judgment upon the interpretation of that document. More importantly, the conflicting testimony contained in the affidavits filed by both parties unequivocally establishes the existence of a genuine issue of material fact on the question of the intent of the parties as to indemnity. The affidavits filed on behalf of Ceramic assert that the parties mutually intended that the indemnity agreement apply to the subcontract, whereas the affidavit submitted by Scandia and U.S. Fire asserted there was no such intent and in fact Scandia would have objected to an indemnity agreement in the subcontract. This factual dispute cannot be resolved by summary judgment and the trial court erred in concluding otherwise, in particular by allowing the affidavits of one side to preponderate over the other.
Ceramic contends the parties made a minor procedural error in failing to change the party designation in Paragraph 21 to properly name Ceramic as "Contractor" and Scandia "Subcontractor". This assertion is, however, merely Ceramic's version of the reason for the ambiguity in the contract and Scandia and U.S. Fire's conflicting position on the intent of the parties is by definition a genuine issue of material fact which would preclude the granting of a summary judgment.
In summary, as noted above, it is well-settled that indemnity agreements are to be strictly construed with the intent of the parties to be the foremost consideration in the interpretation of those contracts. The intent of the parties to this subcontract cannot be determined within the four corners of that instrument and such intent should be resolved only after a trial on the merits rather than by use of the summary judgment procedure.

Decree
For the reasons stated herein, the judgment of the trial court in favor of Ceramic is REVERSED, the motion for summary judgment is DENIED, and this matter is REMANDED to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to Ceramic.