**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2018 CA 0903

JUSTIN PARKER AND GREGORY GUMPERT

VERSUS

ZURICH AMERICAN INSURANCE COMPANY, THE SHAW GROUP, INC.
AND GREGORY BEASLEY

Judgment rendered **AUG 2 7 2019**

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2006-15075, Div. "D"

The Honorable Peter Garcia, Judge Presiding

* * * * *

| | |
|---|---|
| Richard S. Vale | Attorneys for Plaintiffs/Appellees |
| Eric E. Pope | Zurich American Insurance Company |
| Brett W. Tweedel | and The Shaw Group, Inc. |
| Metairie, LA | |
| | |
| Brett E. Kinchen | Attorneys for Third Party Defendant |
| Stephen F. Butterfield | HKA Enterprises, Inc. |
| Benjamin H. Dampf | |
| Baton Rouge, LA | |

* * * * *

**BEFORE: McDONALD, CRAIN, AND HOLDRIDGE, JJ.**

McDonald, J. concurs.

W.J.C., concurs

**HOLDRIDGE, J.**

In this contract dispute, HKA Enterprises, Inc., appeals a summary judgment granted in favor of The Shaw Group, Inc., and Zurich American Insurance Company on their indemnity, attorney's fees, and breach of contract claims. We reverse and remand.

## BACKGROUND

Some of the facts forming the basis of this appeal were discussed by this court in a prior appeal. **Parker v. Zurich**, 2016-0442 (La. App. 1 Cir. 12/22/16), 2016 WL 7407383. On October 12, 2005, Justin Parker was driving an International truck, owned by The Shaw Group, Inc., on Interstate 12 in Baton Rouge, Louisiana. Gregory Gumpert was a guest passenger in the truck. The truck driven by Mr. Parker was rear-ended, and a lawsuit seeking personal injury damages was filed by Mr. Parker and Mr. Gumpert on October 10, 2006. In the petition, the plaintiffs appear to allege that a truck owned by The Shaw Group, Inc., and operated by Gregory Beasley, rear-ended another truck owned by The Shaw Group, Inc., pushing that vehicle into Mr. Parker's truck.

The underlying lawsuit was filed against The Shaw Group, Inc., and its insurer, Zurich American Insurance Company (collectively referred to as "Shaw"), and Mr. Beasley. The plaintiffs alleged that Shaw owned the truck Mr. Beasley was driving, that Mr. Beasley was an agent or employee of Shaw, and that he was on a mission for Shaw at the time of the accident, making Shaw liable for Mr. Beasley's negligence under the doctrine of *respondeat superior*. They also claimed that Shaw negligently entrusted the vehicle to Mr. Beasley. Shaw denied liability for the accident, but admitted that Mr. Beasley was in the course and scope of his employment for Shaw and that he had permission to operate the Shaw vehicle at the time of the accident.

2

Shaw settled the claims of Mr. Gumpert, and on April 4, 2009, Mr. Gumpert's lawsuit against Shaw was dismissed with prejudice. Thereafter, on October 18, 2011, Shaw filed a third party demand against HKA Power Services, LLC (HKA Power), in which it asserted that Mr. Beasley was an employee of HKA Power performing services for Shaw pursuant to a labor service agreement for the provision of supplemental labor at the time of the accident. Shaw maintained that it was entitled to a defense and indemnity with respect to the claims of Mr. Gumpert and Mr. Parker because: (1) at the time of the accident, there was a Master Supplemental Labor Services Agreement between HKA Power and Energy Delivery Systems (EDS), a wholly owned subsidiary of Shaw, in which HKA Power agreed to provide supplemental labor to EDS and its affiliated entities (sometimes referred to herein as the "2003 Master Agreement" or "the agreement"); (2) at the time of the accident, Mr. Beasley was an employee of HKA Power providing supplemental labor pursuant to that contract; (3) the 2003 Master Agreement obligated HKA Power to fully defend, indemnify, and hold harmless EDS and all affiliated companies from any claims, demands, causes of action of any kind, losses, damages, costs, and expenses arising from injuries caused in part by the negligence of HKA Power's employees; and (4) the 2003 Master Agreement obligated HKA Power to add EDS and its affiliates as additional insureds on all commercial general liability and automobile liability policies covering the acts of HKA Power's employees. Shaw sought to recover all costs of the underlying lawsuit, including attorney's fees, and all sums expended to settle Mr. Gumpert's personal injury claim.

In an amended third party demand filed in 2012, Shaw added HKA Enterprises, Inc. (HKA Enterprises) as a defendant, alleging that HKA Enterprises is the parent company and/or successor entity to HKA Power. Shaw reiterated all

3

of the allegations of the original third party demand against HKA Enterprises, seeking indemnification for all claims asserted by Mr. Parker and Mr. Gumpert pursuant to the 2003 Master Agreement, as well as attorney's fees.

Shaw amended its third party demand against HKA Enterprises to alternatively assert it was entitled to virile share contribution for the payment of settlement proceeds to Mr. Gumpert and for all sums paid for property damages. On September 26, 2013, Shaw again amended its third party demand to assert a breach of contract claim against HKA Enterprises. Therein, Shaw alleged that HKA Enterprises is the parent company and/or successor entity to HKA Power, and that Shaw acquired EDS on November 21, 2003. Shaw's breach of contract claim was based on Paragraph 8.1 of the 2003 Master Agreement which required HKA Power to have commercial general and automobile liability insurance in effect during the term of the agreement, and Paragraph 8.2 of that agreement requiring that all insurance be endorsed to add EDS and its affiliates as additional insureds. Shaw alleged that HKA Enterprises failed to add EDS as an additional insured on its insurance policies in breach of the 2003 Master Agreement, entitling Shaw to recover from HKA Enterprises damages resulting from that breach, including: (1) any and all expenses incurred in this matter, including court costs and fees; (2) all amounts paid to any party as a result of this accident; (3) attorney's fees incurred in connection with defending the plaintiffs' claims, and (4) all attorney's fees incurred by Shaw in seeking to enforce the obligations owed by HKA Enterprises pursuant to the 2003 Master Agreement.

In answers to the third party demands, HKA Enterprises alleged that HKA Power was dissolved in July of 2005, and admitted that HKA Enterprises had taken over the activities of HKA Power "to a certain extent," which was not known at that time. In an amended petition, Mr. Parker added HKA Enterprises as a

4

defendant, alleging that HKA Enterprises is the parent and/or successor entity to HKA Power and that HKA Enterprises is liable for the negligence of its employee, Mr. Beasley. Mr. Beasley, who never was served with a copy of the petition, was dismissed from the lawsuit on April 2, 2013.

On March 17, 2014, Shaw filed a motion for partial summary judgment in which it sought a judgment decreeing that it is owed a defense and indemnity from HKA Enterprises as stipulated in the 2003 Master Agreement, or alternatively, that HKA Enterprises breached the 2003 Master Agreement by failing to obtain the required insurance. In its supporting memorandum, Shaw argued that HKA Enterprises assumed control of HKA Power in July of 2005, and despite the change in ownership, Shaw and HKA Enterprises continued to operate in accordance with the terms of the 2003 Master Agreement during and after the accident in question.

In support of the motion, Shaw attached to its memorandum the affidavit of Steve Allison, the vice president of Shaw's Corporate Risk Management department, who attested that Shaw's records showed that: (1) HKA Power is a provider of supplemental labor; (2) on November 14, 2003, HKA Power and EDS entered into the 2003 Master Agreement; (3) on October 12, 2005, an EDS vehicle being operated by Mr. Beasley was involved in the subject accident; (4) EDS was a wholly owned subsidiary of Shaw on the date of the accident; (5) at the time of the accident, Mr. Beasley was an employee of HKA Power and was performing work for EDS pursuant to the 2003 Master Agreement; (6) pursuant to Article 9, Section 1 of the 2003 Master Agreement, HKA Power was operating as an independent contractor at the time of the accident; and (7) pursuant to Article 11, Section 1 of the 2003 Master Agreement, HKA Power agreed to indemnify and defend EDS from any claims based on the negligence of the employees of HKA Power.

5

The 2003 Master Agreement filed in support of Shaw's motion was executed by HKA Power and EDS on November 14, 2003, to be in effect for a term of two years. HKA Power, a company providing supplemental labor, and EDS, an energy delivery service, entered into the agreement to enable EDS and its subsidiaries to obtain supplemental labor from HKA Power on an as-needed basis. Pursuant to the agreement, HKA Power agreed to provide qualified "Assigned Employees" to EDS. Article 9, Section 1 of the agreement sets forth an independent contractor relationship between HKA Power and EDS, specifically providing that HKA Power employees, including its assigned employees, would not be considered EDS employees for any purpose whatsoever. Article 11.1 contains an indemnity provision, which reads as follows:

> [HKA Power] agrees to indemnify, defend and hold EDS, its directors, officers, employees, agents, representatives, insurers, contractors [excluding HKA Power] and subsidiary, affiliated companies and their respective directors, officers, employees, agents, representatives, insurers and contractors [excluding [HKA Power]) (collectively, the "Indemnified Parties") harmless from and against all claims, demands, causes of action of every kind and character, losses, damages, costs and expenses (including attorneys' fees and other costs of investigation and defense), including any arising from any injury of or death to persons, damage to or destruction of property ... whether contractual, in tort, or as a matter of strict liability or liability imposed by statute, regulations, or ordinances, arising out of, in whole or in part, (i) a determination by any court of competent jurisdiction that any Assigned Employee is an employee of EDS, (ii) the breach or alleged breach by [HKA Power] of any provision of this Agreement ... , (iii) any violation or alleged violation of law by [HKA Power], its employees (including the Assigned Employees), agents or third parties over which it has control ... . The indemnity provided in this Article applies even though any such claim, demand, cause of action, loss, damage, cost or expense may be attributable to the joint, concurrent or contributory negligence of any Indemnified Party.

In support of its breach of contract claim, Shaw relied on Articles 8.1 and 8.2 of the 2003 Master Agreement, entitled "Insurance." Article 8.1 provides that during the term of the agreement, HKA Power shall maintain, with respect to all assigned employees, commercial general liability insurance against claims for

6

damages resulting from personal injury "at each site" and automobile liability insurance against claims for damages resulting from bodily injury that may arise from the operation of any owned, hired, or non-owned automobiles with minimum limits of $1,000,000.00 for each accident. Article 8.2 provides that "[a]ll insurance, except workers' compensation, shall be endorsed to add as an additional insured EDS, its affiliates, and, as requested by EDS, such other contractors of EDS with whom any Assigned Employee may work."

In support of its motion for summary judgment, Shaw also offered HKA Enterprises' responses to Shaw's request for answers to interrogatories and production of documents. In the responses, HKA Enterprises asserted that Mr. Beasley was an employee of HKA Enterprises, working for EDS, and driving a Shaw/EDS owned vehicle with the permission of Shaw/EDS at the time of the accident. HKA Enterprises admitted that it had no evidence that it, HKA Power, or any of its affiliates maintained a policy of insurance naming Shaw, EDS, or any of their affiliated entities as additional insureds to any policy of insurance. When asked to explain the relationship between HKA Enterprises and HKA Power, HKA Enterprises stated that HKA Power was an individual limited liability company that originally provided temporary staff to EDS, a division of Duke Energy, and that when HKA Power was closed in July of 2005, its existing staff was carried over to HKA Enterprises. Documents filed in support of the motion and by HKA Enterprises in response to discovery requests included Mr. Beasley's employee payment history from 2000 through early 2012 containing references to "Energy Delivery Services," a spreadsheet showing that Mr. Beasley was deployed on September 25, 2005, as a lineman/serviceman and assigned a bucket truck, and a Shaw accident report of Mr. Beasley's accident listing "Energy Delivery Services" as its subsidiary.

7

In opposition to the motion, HKA Enterprises argued that the 2003 Master Agreement executed between HKA Power and EDS is not binding on the parties in this case. It submitted that there is a genuine issue of material fact as to whether that agreement can be enforced by Shaw against HKA Enterprises, when, at the time of the accident, HKA Power and EDS were no longer in existence. HKA Enterprises further pointed out that Shaw's motion assumed that the 2003 Master Agreement is binding on the subsequent entities, but Shaw offered no evidence in support of that position. In support of its opposition, HKA Enterprises filed the affidavit of Gary Davis, its Senior Account Executive and Director of Contracts, who attested that he reviewed all of HKA Enterprises' records, which included the 2003 Master Agreement and that HKA Enterprises had no records of any additional contracts entered into with EDS.

Secondly, HKA Enterprises argued that even if the 2003 Master Agreement is binding on the parties, Shaw's motion should be denied because of EDS' failure to adhere to the terms of that agreement. Specifically, HKA Enterprises pointed to the absence of any work orders describing the work to be performed by Mr. Beasley and written authorization to operate the vehicle in question as required by Article 1.2 of the 2003 Master Agreement. In his affidavit, Mr. Davis attested that HKA Enterprises has no records of a work order being issued by EDS and no records or documentation from EDS authorizing Mr. Beasley to operate the truck at the time of the accident as required by the 2003 Master Agreement. HKA Enterprises also claimed that the deposition testimony of Steven Allison, of which it did not yet have a transcript, created a genuine issue of material fact as to whether HKA Enterprises breached the 2003 Master Agreement by failing to obtain the requisite insurance.

8

Finally, HKA Enterprises argued that even if the court were to find that the 2003 Master Agreement required HKA Enterprises to indemnify Shaw in some circumstances, it did not require HKA Enterprises to pay any costs accrued in the defense of or in the resolution of Mr. Gumpert's settlement, which occurred prior to HKA Enterprises' entry into the litigation. HKA Enterprises relied on a provision of the indemnity agreement giving EDS the right to have a representative present for any settlement of any matter giving rise to an indemnification objection under Article 11.2 of the 2003 Master Agreement.

In response, Shaw filed additional documentation in support of its claim that the 2003 Master Agreement is binding on HKA Enterprises and Shaw. It offered business filing documents from the South Carolina Secretary of State showing that HKA Enterprises was incorporated on July 30, 2002; HKA Power was formed on September 6, 2002, and that HKA Power merged into HKA Enterprises on July 20, 2005, dissolving HKA Power as of that date. It also offered the deposition testimony of Mr. Allison, the vice-president of Shaw's risk management department during the pertinent time period. According to Shaw, Mr. Allison's testimony did not create a genuine issue of material fact as to whether HKA Enterprises breached the 2003 Master Agreement.

In his deposition, Mr. Allison acknowledged that among his duties for Shaw was to ensure that the entities with whom Shaw contracted were insured and that Shaw's subcontractors met Shaw's insurance standards. He stated that every contract of $500,000.00 or more had to be approved by Risk Management before it was signed, and that he was involved in Shaw's acquisition of EDS, which at the time was part of Duke Energy. Shaw purchased the stock of EDS, and while Mr. Allison could not recall the specific date of the purchase, he indicated that it was

9

around November 21, 2003. On January 12, 2004, EDS changed the name of the corporation to Shaw/EDS.

Mr. Allison stated that following Shaw's purchase of EDS, Shaw requested the subcontracts EDS had and the insurance certificates associated with those subcontracts to make sure that all insurance certificates were in compliance with Article 8.5 of the 2003 Master Agreement. He also stated that each time the insurance was set to expire on that existing certificate, Shaw would have requested a new insurance certificate. Mr. Allison stated that EDS had original documents at its North Carolina office, and sent him electronic files, for which he created a file under Shaw's Power Division; however, Mr. Allison did not know what happened to these documents. He assumed that all of the documents Shaw had pertaining to Shaw's acquisition of EDS in what he recollected as 2003 were transferred to Pike Electric, which purchased Shaw/EDS in 2008.

Mr. Allison noted that he reviewed documents in connection with the underlying personal injury claim, the petition, and the 2003 Master Agreement. He stated that other than the 2003 Master Agreement, he was unaware of any other EDS/HKA documents. Mr. Allison acknowledged that Mr. Beasley's payment history indicated that he was an employee of HKA Enterprises. Mr. Allison admitted that he was unaware of any contract having been executed between Shaw/EDS and HKA Enterprises.

During the deposition, Mr. Allison's attention was directed to Article 16.3 of the 2003 Master Agreement, which states that HKA Power shall not assign this agreement or subcontract any of its obligation under the agreement without the prior written consent of EDS. Mr. Allison acknowledged that if there was a written consent from EDS to HKA Power or HKA Enterprises authorizing an assignment of the 2003 Master Agreement, Shaw's legal department would have

10

such a document. He admitted that if such a consent existed, he would not have seen it and he knew nothing about the continuing relationship between Shaw/EDS and HKA Enterprises. However, he did offer his opinion that the 2003 Master Agreement was in effect on the date of the accident, and stated that he had no reason to believe that contract would not have been in effect based on his record search and investigation.

Mr. Allison was asked a series of questions regarding whether he was aware of the existence of any written documents required by various provisions of the 2003 Master Agreement, including work orders, purchase orders, and written authorization for Mr. Beasley to operate the vehicle involved in the accident. Mr. Allison was unable to say if any such documents existed, but added if they existed, the documents would be in the possession of Pike Electric.

Attached to Mr. Allison's deposition is a document showing that EDS amended its articles of incorporation to change its name to Shaw Energy Delivery Services, Inc. on January 12, 2004. The document states that the amendment was adopted by EDS' sole shareholder and that the amendment did not provide for an exchange, reclassification, or cancellation of issued shares.

HKA Enterprises filed a supplemental memorandum focusing on Mr. Allison's admissions that he did not know if EDS issued a purchase order pertaining specifically to Mr. Beasley or ever authorized in writing the operation by Mr. Beasley of any Shaw or EDS vehicle. According to HKA Enterprises, Mr. Allison's testimony highlights issues of fact as to whether EDS ever provided written documentation required by the contract to HKA Power. HKA Enterprises also pointed to Mr. Allison's acknowledgment that when Shaw acquired EDS, it would have looked to verify that insurance was in existence as specified in the

11

contract as creating an issue of fact as to whether HKA Enterprises breached the 2003 Master Agreement.

On June 10, 2014, following a hearing, the trial court signed a judgment granting Shaw's motion in part and denying it in part. The trial court ruled that HKA Enterprises owed Shaw a defense and indemnity obligation with respect to the claims asserted by Mr. Parker and that HKA Enterprises breached the 2003 Master Agreement for failing to maintain insurance coverage and failing to add Shaw/EDS as an additional insured as required by that agreement. Shaw's motion for a defense and indemnity from HKA Enterprises for the claims asserted by Mr. Gumpert was denied. HKA Enterprises' applications for supervisory writs to review the grant of summary judgment were denied by this court and the Louisiana Supreme Court.

Thereafter, on January 21, 2015, Shaw filed another motion for partial summary judgment, asking the court to set the damages HKA Enterprises owed in defense costs from the date the lawsuit was filed on October 10, 2006, through November 30, 2014, as well as damages for breach of contract. Specifically, Shaw sought to recover $79,025.82 it claimed was incurred in attorney's fees and costs in connection with defending itself in the underlying lawsuit and in pursuing its third party demand. Shaw also sought to recover $65,000.00, the amount Shaw paid to Mr. Gumpert to settle his personal injury claim, for HKA Enterprises' breach of the 2003 Master Agreement.

In support of its second motion, Shaw relied on the 2003 Master Agreement's indemnity provision to recoup attorney's fees and costs it incurred in defending the underlying litigation from HKA Enterprises. Shaw also relied on Article 16.4 of the 2003 Master Agreement in support of its claim that it was entitled to recoup attorney's fees and costs incurred in connection with the third

12

party demand Shaw filed to enforce HKA Enterprises' obligations under that agreement. Article 16.4 of the 2003 Master Agreement states that "[i]f the enforcement of the obligations of [HKA Power] hereunder are referred to any attorney by EDS, then [HKA Power] agrees to pay EDS's reasonable attorneys' fees and court costs in addition to any other relief which may be obtained."

In further support of the motion, Shaw also offered the affidavit of its attorney, Brett Tweedel, who attested that he charged $150.00 per hour for legal work performed in the case and that his firm billed $79,025.82 in expenses as of November 30, 2014. Shaw also offered documents detailing costs incurred in connection with this matter from May 16, 2014, through October 28, 2014 in the amount of $20,010.82, and an itemized, detailed account of the work performed by its attorneys from October 25, 2006, through November 26, 2014, in the amount of $59,015.00.

In opposition to Shaw's motion, HKA Enterprises asserted that since Shaw's previous motion for partial summary judgment was granted, HKA Enterprises discovered significant new evidence held by Pike Electric, which purchased EDS from Shaw in 2008. HKA Enterprises offered a "Master Employee Services and Staffing Agreement" (sometimes referred to as the "2008 Agreement") executed by HKA Enterprises and The Shaw Group, Inc. on February 12, 2008. HKA Enterprises insisted that the 2008 Agreement, executed four years before it was added as a party to this litigation, is the contract defining the rights and obligations of HKA Enterprises and Shaw in this case. HKA Enterprises pointed out that the 2008 Agreement specifically states that it supersedes any work agreement executed by and between Shaw and HKA Enterprises relating to the work or services to be performed by HKA Enterprises with Shaw, and that the 2008 Agreement has a significantly different indemnity provision than the 2003 Master Agreement.

13

According to HKA Enterprises, under the wording of the 2008 Agreement's indemnity provision, it would not owe indemnity and defense costs because there are facts suggesting Mr. Beasley was driving a Shaw vehicle at the time of the accident. HKA Enterprises also urged that Shaw's attempt to collect defense costs and indemnity before there had been a judicial determination that Shaw is liable to the plaintiffs in the underlying lawsuit is premature. HKA Enterprises offered the affidavit of Mr. Davis, who attested that he signed the 2008 Agreement as the authorized representative for HKA Enterprises.

On April 1, 2015, the trial court signed a judgment granting Shaw's motion for partial summary judgment on its breach of contract claim, awarding Shaw damages in the amount of $65,000.00. The court also granted Shaw's motion for partial summary judgment with respect to attorney's fees and costs owed by HKA Enterprises, but ruled that the exact amount owed for the period of October 10, 2006 through November 30, 2014, would be determined at a later date.

On July 20, 2015, Shaw filed a motion to set attorney's fees and costs owed by HKA Enterprises, to amend the April 1, 2015 judgment to reflect the exact amount of attorney's fees and costs, and to designate the June 10, 2014, and the April 1, 2015, judgments as final judgments. In opposition to the motion, HKA Enterprises insisted that it should not be held liable for any costs or attorney's fees incurred prior to February 2, 2012, the date on which HKA Enterprises was notified of this lawsuit. Additionally, HKA Enterprises insisted that Shaw is not entitled to recover attorney's fees incurred in prosecuting the third party demand, citing Article 13.6 of the 2003 Master Agreement, which governs the arbitration process, and provides that the losing party in an arbitration or court proceeding in aid of an arbitration process must reimburse the other party for reasonable costs,

14

expenses, and charges incurred by the prevailing party, provided, however, that each party shall bear its own attorney's fees and expenses.

In reply, Shaw posited that HKA Enterprises' opposition failed to address the reasonableness of its attorney's fee demand. It further pointed out that in the eight months that had passed since the trial court left open a determination of the exact amount owed by HKA Enterprises in order to allow HKA Enterprises an opportunity to traverse the reasonableness of Shaw's attorney's fees and costs, HKA Enterprises did absolutely nothing. As a consequence, Shaw argued, it must be assumed that HKA Enterprises did not object to the amount of the attorney's fees and costs incurred by Shaw and instead agreed that those amounts are reasonable.

On November 18, 2015, the trial court signed a judgment granting Shaw's motion to set attorney's fees and costs and amending the April 1, 2015 judgment to award Shaw $79,025.25 in attorney's fees and costs, plus interest, from October 10, 2006, through November 30, 2014. The court further granted Shaw's motion to designate the June 10, 2014, and the April 1, 2015 judgments as final judgments.

On December 23, 2015, the parties filed a joint motion to dismiss Mr. Parker's claims against Shaw with prejudice, which was granted by the trial court on January 4, 2016. Mr. Parker also dismissed his lawsuit with respect to HKA Enterprises.

Thereafter, HKA Enterprises filed an appeal contesting the June 10, 2014, April 1, 2015, and November 18, 2015 judgments. This court dismissed the appeal, finding that none of the three judgments rendered by the trial court were final appealable judgments. **Parker v. Zurich**, *supra*. The matter was remanded to the trial court for further proceedings.

15

Following remand, on August 16, 2017, Shaw filed a motion for summary judgment seeking to recover attorney's fees and costs from December 1, 2014, through the present day in the amount of $30,334.59 and the $33,100.00 payment made to Mr. Parker to settle his personal injury lawsuit, in addition to the amounts previously awarded by the trial court in the earlier judgments. In support of the motion, Shaw attached the following documents to its memorandum: (1) the 2003 Master Agreement; (2) the affidavit of Mark Walling, the corporate risk manager for Chicago Bridge and Iron, which acquired The Shaw Group on February 13, 2013, attesting that on December 14, 2015, Mr. Parker was paid $33,100.00 on behalf of Shaw and Chicago Bridge and Iron in full and final settlement of all claims against them; and (3) the affidavit of Brett Tweedel, Shaw's attorney, who attested that he charged $150.00 per hour for legal work performed in this matter and that his firm billed $30,334.59 in expenses as of November 30, 2014; and (4) a detailed fee schedule and itemization of attorney's fees incurred by Shaw from December 2, 2014, through July 28, 2017, in the amount of $28,903.50, as well as a detailed statement of costs incurred in this matter from December 9, 2014, through August 2, 2017, in the amount of $1,401.09. Shaw maintained that as with its previous motions for summary judgment, there is no genuine issue of material fact in dispute and Shaw is entitled to summary judgment on all claims asserted in the third party demand.

In opposition to the motion, HKA Enterprises argued that Shaw could not establish that the 2003 Master Agreement applied to HKA Enterprises because it was not a party to that agreement. It argued that Shaw was not entitled to summary judgment on any of its claims because: (1) there is no privity of contract between Shaw and HKA Enterprises as the 2003 Master Agreement was executed between EDS and HKA Power and neither Shaw nor HKA Enterprises were parties to that

16

agreement; (2) Shaw failed to produce any evidence showing that HKA Power assigned the 2003 Master Agreement to HKA Enterprises before the subject accident; (3) even if the 2003 Master Agreement applies in this case, Shaw's claim is barred by the doctrine of laches and estoppel; (4) there are material issues of fact as to whether Shaw complied with the requirements of the 2003 Master Agreement, referencing the absence of a work order from EDS to HKA Enterprises or Mr. Beasley to perform services for EDS and the absence of a written agreement giving Mr. Beasley authority to operate a Shaw vehicle as required by various sections of the 2003 Master Agreement; (5) even if Shaw is entitled to indemnity, the court must determine if the attorney's fees being sought are reasonable; and (6) the attorney's fees sought by Shaw are not recoverable because Shaw did not submit proof that the bills had in fact been paid.

In support of its opposition, HKA Enterprises attached the following documents thereto: (1) Shaw's responses to HKA Enterprises' third set of interrogatories in which Shaw acknowledged that it acquired EDS on or about November 21, 2003; (2) Shaw's responses to HKA Enterprises' request for production of documents, admitting that it was unable to locate any documents titled "Purchase Order" or "Work Order" and that Shaw was unable to locate any responsive documents authorizing Mr. Beasley to operate the vehicle in which the October 12, 2005 accident occurred, given the fact that Shaw/EDS was sold in 2008 and all records relating to Shaw/EDS were transferred to the new owner, along with other documents containing employment related references to Beasley and Shaw accident reports; (3) various documents submitted by Shaw to HKA Enterprises supplementing its response to requests for production of documents showing that HKA Enterprises billed EDS for Mr. Beasley's services on October 19, 2005 for the period ending October 5, 2005, along with a Shaw/EDS

disbursement voucher paying that invoice; (4) the affidavit of Mr. Davis relative to the 2008 Agreement and HKA Enterprises' lack of knowledge or notice regarding the October 12, 2005 accident involving Mr. Beasley, and (5) the 2008 Agreement executed by HKA Enterprises and The Shaw Group, Inc.

On December 20, 2017, the trial court signed a judgment granting Shaw's motion for summary judgment with respect to all claims asserted by Shaw in the third party demand. The judgment decreed that HKA Enterprises owed Shaw damages in the following amounts: (1) $79,025.25 plus interest for attorney's fees and costs incurred from October 10, 2006 through November 30, 2014; (2) $30,334.59 plus interest for attorney's fees and costs incurred since December 1, 2014; (3) $33,100.00 plus interest for the settlement payment to Mr. Parker; and (4) $65,000.00 plus interest for all breach of contract claims asserted in the third party demand.

HKA Enterprises filed a motion for a new trial on the merits and to correct deficiencies in the December 20, 2017 judgment with respect to the decretal language. The trial court denied the motion on the merits, but granted the motion to amend the judgment's decretal language and the calculation of interest. In a judgment signed by the trial court on April 12, 2018, the court awarded the same sums identified above, but expanded the language to decree the dates on which judicial interest would run on the individual awards and to make clear that the $65,000.00 breach of contract damage award was for HKA Enterprises' failure to add Shaw as additional insured under its policies of insurance.[1]

HKA Enterprises appealed, asserting that the trial court erred in granting summary judgment on Shaw's claims for defense, indemnity, and attorney's fees.

---

[1] The trial court designated the judgment as a final judgment that is immediately appealable. Because the judgment disposed of all claims asserted by Shaw in the third party demand, and the underlying lawsuit was settled and dismissed, there was no need for the trial court to designate the judgment as final in order for it to be an appealable judgment.

18

Specifically, HKA Enterprises challenges the use of the summary procedure and the trial court's rulings in: (1) granting contractual indemnity under the 2003 Master Agreement when neither Shaw nor HKA Enterprises were in privity of contract; (2) finding Shaw proved that EDS gave its prior written approval to HKA Power to assign the 2003 Master Agreement to HKA Enterprises; (3) ruling that the subsequent 2008 Agreement between Shaw and HKA Enterprises was not a novation of the 2003 Master Agreement; (4) ruling that HKA Enterprises breached the 2003 Master Agreement; (5) finding that Shaw had complied with its obligations under the 2003 Master Agreement; (6) ruling that the defense of laches did not bar Shaw's claims; (7) awarding Shaw damages for breach of contract; and (8) awarding Shaw attorney's fees.

## DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Jones v. Anderson,** 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3).

This court reviews the evidence on the motion for summary judgment *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Jones,** 224 So.3d at 417. This court must ask the same questions a trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Because it is the substantive law that determines materiality, whether a particular fact in dispute is material must be determined in light of the substantive law applicable to the case. **Id.**

19

## APPLICABILITY OF THE 2003 MASTER AGREEMENT

The purpose of an indemnity agreement is to allocate risk inherent in a certain activity between the parties to the contract. **McKinney v. South Central Bell Telephone Company,** 590 So.2d 1220, 1222 (La. App. 1ˢᵗ Cir. 1991), writ denied, 592 So.2d 1302 (La. 1992). A contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions. **Id**. The general rules governing the interpretation of contracts apply in construing a contract of indemnity. **Naquin v. Louisiana Power & Light Company,** 2005-2104 (La. App. 1ˢᵗ Cir. 11/17/06), 951 So.2d 228, 231, writ denied, 2006-2979 (La. 3/9/07), 949 So.2d 441. The determination of the parties' intent is the foremost requirement in the interpretation and construction of a contract. **Liem v. Austin Power, Inc.,** 569 So.2d 601, 608 (La. App. 2ⁿᵈ Cir. 1990). Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof. **Id.**

Because Shaw's claims for indemnity, attorney's fees, and breach of contract damages are all based on the 2003 Master Agreement, Shaw's initial burden on the motion for summary judgment was to demonstrate that, as a matter of law, the 2003 Master Agreement was a binding and enforceable contract between Shaw and HKA Enterprises on October 12, 2005, the date of the accident in the underlying litigation. The undisputed evidence on the motion for summary judgment established that:

1) HKA Power and HKA Enterprises were formed as separate entities in 2002;

2) On November 14, 2003, HKA Power and EDS executed the 2003 Master Agreement, pursuant to which, HKA Power agreed to provide supplemental labor on an "as-needed" basis to EDS, its subsidiaries, and other affiliated entities; the agreement was effective for a term of 2 years;

3) On November 21, 2003, Shaw acquired EDS by purchasing EDS' stock;

4) When Shaw acquired EDS, EDS was a division of Duke Energy; on January 12, 2004, EDS amended its articles of incorporation to change its name to Shaw Energy Delivery Services;

5) On July 20, 2005, HKA Power merged into HKA Enterprises and was dissolved as of that date; and

6) On October 12, 2005, Mr. Beasley was a HKA Enterprises employee who was driving a Shaw/EDS vehicle with the permission of Shaw/EDS when the accident occurred.

HKA Power and EDS were the parties who executed the 2003 Master Agreement. Prior to the accident, HKA Power had been dissolved when it merged with HKA Enterprises, and EDS had been purchased by Shaw. Because neither HKA Power nor EDS was in existence at the time of the underlying accident, Shaw was required to prove at a minimum that the 2003 Master Agreement imposed indemnity and insurance obligations on HKA Power's successor, HKA Enterprises. Although the ultimate issue of whether Shaw, a non-party to the original contract, can enforce the contract against HKA Enterprises, also a non-party to the contract, may involve a question of law[2], there are a number of factual determinations which must be made to resolve this issue. Crucial to this determination is the relationship between the parties to the 2003 Master Agreement, HKA Power and EDS, and the parties in this litigation, HKA Enterprises and Shaw.

Shaw made no attempt to explain the details regarding the acquisition of HKA Power by HKA Enterprises in its motion for summary judgment. Nor did

---

[2] We note that the 2003 Master Agreement states, in Article 16.7, that the agreement "shall be governed by, and construed in accordance with, the laws of the State of North Carolina, excluding any conflict of laws rules." Shaw did not establish whether HKA Enterprises was bound by the 2003 Master Agreement under North Carolina law as a result of its merger with HKA Power. In granting the motion for summary judgment, the trial court failed to make a threshold determination as to whether North Carolina or Louisiana law regarding theories such as successor liability or assignment of contracts apply in this case.

21

Shaw offer evidence showing that under the applicable law, HKA Power assigned its contracts to HKA Enterprises. We note that there is a specific provision of the 2003 Master Agreement, Article 16.4, which prohibits HKA Power from assigning the agreement or any of its obligations thereunder without the written consent of EDS; Shaw produced no evidence of such written consent.

Instead of demonstrating that HKA Enterprises assumed the contractual indemnity and insurance obligations imposed on HKA Power, Shaw merely argued that HKA Enterprises and Shaw continued to operate pursuant to the terms of the 2003 Master Agreement after the dissolution of the original parties to the contract. Shaw offered no evidence to support its assertion that the parties to the 2003 Master Agreement intended for all of the terms of the 2003 Master Agreement to apply to any subsequent entities. In short, Shaw failed to show that there were no factual questions as to whether HKA Enterprises is bound by the specific indemnity and insurance obligations imposed on HKA Power in the 2005 merger of those entities.

Additionally, Shaw failed to offer sufficient details of its acquisition of EDS. Shaw claimed that on the date of the accident, EDS was a wholly owned subsidiary of Shaw such that indemnity agreement confected between HKA Power and EDS would inure to Shaw's benefit. Again, missing from the evidence in support of Shaw's motion is proof that EDS transferred all of its rights under the 2003 Master Agreement to Shaw as part of Shaw's acquisition of EDS or evidence of any continued relationship between Shaw and EDS following the acquisition. Moreover, HKA Power agreed to indemnify EDS and *its* subsidiaries and affiliated companies from certain claims. Shaw did not offer sufficient evidence establishing that on the date the 2003 Master Agreement was confected, Shaw was a subsidiary

22

or affiliated company of EDS, or that HKA Power agreed to indemnify any entity which would later purchase EDS.

In light of the existence of numerous factual issues concerning the relationships between HKA Power and HKA Enterprises, between Shaw and EDS, and between HKA Enterprises and Shaw, and the absence of evidence defining those relationships, we conclude that the trial court erred in ruling that the 2003 Master Agreement is binding and enforceable as to HKA Enterprises and Shaw as a matter of law. Because the judgments appealed from are based on this erroneous predicate ruling, we reverse the December 20, 2017 judgment granting Shaw's motion for summary judgment with respect to all claims asserted by Shaw in the third party demand against HKA Enterprises and the April 12, 2018 judgment correcting deficiencies in the December 20, 2017 judgment.

## CONCLUSION

For the foregoing reasons, the December 20, 2017 and April 12, 2018 judgments are reversed. This matter is remanded to the trial court for proceedings consistent with this opinion. All costs of this appeal are assessed to appellees, Zurich American Insurance Company and The Shaw Group, Inc.

**REVERSED AND REMANDED.**